OPINION
{¶ 1} Appellant, Richard Summers, appeals from the July 29, 2002 judgment entry of the Ashtabula County Court of Common Pleas, in which he was sentenced for domestic violence.
 {¶ 2} On November 3, 2000, appellant was indicted by the Ashtabula County Grand Jury on one count of domestic violence, a felony of the fifth degree, in violation of R.C. 2919.25(A). On November 9, 2000, appellant entered a not guilty plea at his arraignment. The matter proceeded to a jury trial, which commenced on May 20, 2002.
 {¶ 3} The following facts are pertinent to this appeal: Donna Gilhousen ("Gilhousen") had an intimate relationship with appellant. Gilhousen and appellant lived together for a couple of months before she became pregnant and again while she was pregnant from approximately October through December of 1999. On May 11, 2000, Gilhousen gave birth to a baby girl, Khalia. Gilhousen correctly believed at the time that Khalia was fathered by appellant and paternity was established on July 31, 2000.
 {¶ 4} Gilhousen testified that on July 9, 2000, she was still receiving mail addressed to appellant at her apartment. According to Gilhousen, for about three weeks prior to July 9, 2000, she had relations again with appellant, who found out about Khalia's birth and expressed an interest in having a relationship with his daughter. During this period of time, Gilhousen learned that appellant intended to marry a friend of hers, Melissa Hiel ("Hiel"). On July 9, 2000, Gilhousen called Hiel on the telephone in order to inform her that appellant, whom Hiel was engaged to, was the father of Gilhousen's child out of wedlock. Gilhousen stated that an argument ensued and "[t]he next thing I knew there was a knock at the door."
 {¶ 5} According to Gilhousen, at approximately 8:00 p.m. or 8:30 p.m., appellant, Hiel, and another couple, Gene Roberts ("Roberts") and Laurie Donato ("Donato"), came barging into her apartment, the Ohio Village Apartments, located at 1914 Lambros Lane, Apartment Number C5, in Ashtabula, Ohio. Gilhousen's neighbor, Nichole Jones ("Jones") was also present in Gilhousen's apartment when the four individuals entered. Gilhousen testified that appellant confronted her and accused her of lying to Hiel about having sexual relations with him. Gilhousen stated, "I told [appellant] that he knew that we were having relations. He knew that the baby was his. Why was he trying to deny it? Was he trying to make himself look good in front of [Hiel]? That I didn't understand why all of a sudden [appellant] wanted to change the story ***." Gilhousen further testified that "[appellant] looked at the baby and he looked back at me and made a reference to me and the baby both being a bitch and [appellant] said that the bitch isn't mine." Because Gilhousen became enraged, she replied, "[S]he's not a bitch. You're the bitch."
 {¶ 6} Pursuant to Gilhousen's testimony, appellant grabbed her by the throat for about five or ten seconds, cutting off her air supply. Gilhousen stated that she felt a lot of pressure and could not breathe. At that point, Hiel, Roberts, Donato, and Jones all swarmed in and tried to grab appellant's hands off of Gilhousen's throat. When appellant did release his grasp, Gilhousen lost her balance and fell into a nearby chair. Jones grabbed Khalia and called 9-1-1. According to Gilhousen, Hiel began screaming that her party should leave because she feared that the police were about to arrive. Appellant and his companions then left Gilhousen's apartment. Gilhousen followed the four individuals outside in order to obtain their license plate number.
 {¶ 7} When the police arrived at approximately 9:00 p.m., they questioned Gilhousen regarding the incident. Gilhousen informed them as to what had happened, and Officer Aaron Greenberg ("Officer Greenberg"), with the city of Ashtabula, made a report. Both Gilhousen and Jones gave written statements to Officer Greenberg in which they described the incident. Although paternity was later established, Gilhousen testified that she did not have any formal proof at the time of the incident that appellant was Khalia's father. Gilhousen stated that "[t]he next morning I had a small bruise on my neck and just a little bit of soreness, some stiffness. Nothing that required medical attention." Gilhousen testified that her soreness lasted for a day or two, she did not have anyone photograph the bruise, nor did she seek medical attention.
 {¶ 8} Officer Greenberg testified that Gilhousen "seemed a little upset or agitated" when he arrived at her apartment. Officer Greenberg stated that when he met with Gilhousen on the night at issue, he did not observe any physical injuries on her body.
 {¶ 9} On May 21, 2002, the jury returned a verdict of guilty. On July 26, 2002, a sentencing hearing was held. Pursuant to the July 29, 2002 judgment entry, the trial court sentenced appellant to nine months in prison, with credit for forty days of time served, plus court costs. Appellant filed a timely notice of appeal on August 22, 2002, and makes the following assignments of error:
 {¶ 10} "[1.] Appellant's conviction is not supported by the manifest weight of the evidence.
 {¶ 11} "[2.] The trial court below improperly instructed the jury that it could convict appellant of domestic violence under [R.C.] 2919.25
if it was proven beyond a reasonable doubt that he attempted to cause physical harm to a family or household member."
 {¶ 12} In his first assignment of error, appellant argues that his conviction is not supported by the manifest weight of the evidence. Appellant contends that the state failed to adequately prove that appellant knowingly caused physical harm to a family or household member on July 9, 2000. Appellant alleges that the state failed to adequately prove that Gilhousen was a family or household member on July 9, 2000, and/or that appellant knew that she was.
 {¶ 13} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 14} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 15} "`"(***)(T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. ***"'
 {¶ 16} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' *** `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' ***" (Emphasis sic.) (Citations omitted.)
 {¶ 17} "A reviewing court must look to the evidence presented *** to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. Statev. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 18} In Schlee, supra, at 14-15, we also stated that: "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 19} "`In determining whether the verdict was against the manifest weight of the evidence, "(***) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (***)"' (Citations omitted.) ***." (Emphasis sic.)
 {¶ 20} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 21} R.C. 2919.25 states in pertinent part:
 {¶ 22} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 23} "***
 {¶ 24} "(E)(1) `Family or household member' means any of the following:
 {¶ 25} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 26} "(i) A spouse, a person living as a spouse, or a former spouse of the offender.
 {¶ 27} "***
 {¶ 28} "(2) `Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 29} R.C. 2901.01(A)(3) provides that "`[p]hysical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 30} In the case at bar, appellant presents two issues for review and argument under his first assignment of error. With respect to the first issue, appellant specifically argues that his conviction was against the manifest weight of the evidence because Officer Greenberg did not observe any signs of injury on Gilhousen, Gilhousen did not seek medical treatment, nobody testified to seeing any injuries on Gilhousen, and there were no photographs of Gilhousen's bruise. Although appellant alleges a manifest weight argument, it appears that he is challenging the sufficiency of the evidence since appellant contends that the state failed to prove the "physical harm" element of the offense. In any event, appellant's argument fails under either analysis.
 {¶ 31} Pursuant to appellant's first issue, Officer Greenberg testified that he did not observe any physical injuries on Gilhousen on the night at issue. However, according to Gilhousen, she did not notice a bruise on her neck until the following morning. As such, Gilhousen's testimony did not conflict with Officer Greenberg's. It is irrelevant that Gilhousen failed to seek medical treatment, nobody saw Gilhousen's injury, and no photographs were taken of her bruise. R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member. State v. Nielsen
(1990), 66 Ohio App.3d 609, 612. In any event, pursuant to R.C.2901.01(A)(3), "any injury *** regardless of its gravity or duration" constitutes physical harm to persons. (Emphasis added.) Thus, the physical harm element of R.C. 2919.25(A) was satisfied since the jury believed Gilhousen's testimony that she had "a small bruise" on her neck the morning after the attack and experienced some soreness and stiffness "for a day or two," and/or that appellant attempted to cause Gilhousen physical harm.
 {¶ 32} With respect to his second issue, appellant alleges that the state failed to prove that Gilhousen was a family or household member on July 9, 2000, and/or that appellant knew she was such. Because there is no conflicting evidence to weigh and resolve, appellant's argument goes to the sufficiency of the evidence since appellant claims that the state did not prove an element of domestic violence. In any event, under either standard, appellant's argument fails.
 {¶ 33} According to Gilhousen, appellant resided with her for a couple of months before she became pregnant and again for approximately three months after she became pregnant from October through December 1999. In fact, appellant continued to receive his mail at Gilhousen's apartment on July 9, 2000. Gilhousen also testified that for about three weeks prior to the incident at issue she had been seeing appellant, who became aware of Khalia's birth and expressed a desire to have a relationship with his daughter. Pursuant to R.C. 2919.25(E)(1)(a)(i), a family or household member includes "a person living as a spouse." R.C.2919.25(E)(2) provides in pertinent part that a person living as a spouse includes "a person *** who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." Whether appellant's and Gilhousen's living arrangements constituted cohabitation for purposes of R.C. 2919.25 was a question of fact for the jury. State v. Miller (1995), 105 Ohio App.3d 679, 689. Based on the foregoing facts, Gilhousen was a family or household member on July 9, 2000, pursuant to R.C. 2919.25. Therefore, according toSchlee, supra, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Thus, appellant's first assignment of error is without merit.
 {¶ 34} In his second assignment of error, appellant argues that the trial court improperly instructed the jury that it could convict him of domestic violence under R.C. 2919.25 if it was proven beyond a reasonable doubt that he attempted to cause physical harm to a family or household member.
 {¶ 35} A decision of whether jury instructions are proper rests within the discretion of the trial court. State v. Stewart, 11th Dist. No. 2000-L-170, 2003-Ohio-62, at ¶ 16. A reviewing court must determine whether the trial court abused its discretion in its instructions to the jury. Id. at ¶ 13. State v. Montgomery (1990),61 Ohio St.3d 410, 413, states: "The term `abuse of discretion' `(***) connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. (***),State v. Adams (1980), 62 Ohio St.2d 151, 157 ***." (Parallel citations omitted.) "[A]n appellate court will not reverse a trial court's decision to give a particular jury instruction absent an abuse of discretion."State v. Johnson, 11th Dist. No. 2001-A-0043, 2002-Ohio-6570, at ¶ 24, citing State v. Huckabee (Mar. 9, 2001), 11th Dist. No. 99-G-2252, 2001 Ohio App. LEXIS 1112, at 6.
 {¶ 36} In the case sub judice, over defense counsel's objection, the trial court delivered the following jury instruction: "[Appellant] is charged with domestic violence. Before you can find [appellant] guilty, you must find beyond a reasonable doubt that on or about the 9th day of July, 2000, and in the [c]ity of Ashtabula, Ashtabula County, Ohio, [appellant] knowingly caused or attempted to cause physical harm to a family or household member." Appellant contends that this jury instruction was improper since Gilhousen did not allege that appellant attempted to cause physical harm to her, but rather said that he, in fact, did. Therefore, according to appellant, the jury should not have been permitted to decide this matter upon two alternative theories of prosecution. We disagree.
 {¶ 37} In the instant matter, appellant was indicted on one count of domestic violence in violation of R.C. 2919.25(A). R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." (Emphasis added.) Due to the disjunctive "or" in R.C. 2919.25(A), the state may obtain a domestic violence conviction by proving either that appellant knowingly caused or
attempted to cause physical harm to a family or household member. (Emphasis added.) We agree with the trial court which stated that "the indictment does charge cause or attempt to cause. [R.C. 2919.25(A)] provides for either cause or attempt to cause, and on the evidence, it is the [c]ourt's opinion that the jury could find — — reasonably find on the evidence that [appellant] did cause or, if he did not cause, that he attempted to cause physical harm to [Gilhousen]." Therefore, the trial court's instruction to the jury did not constitute an abuse of discretion. Thus, appellant's second assignment of error is without merit.
 {¶ 38} For the foregoing reasons, appellant's assignments of error are not well taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.
Judgment affirmed.
William M. O'Neill and Diane V. Grendell, JJ., concur.