[Cite as *State v. Abbasov*, 2015-Ohio-5379.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26470 |
| | : | |
| v. | : | Trial Court Case No. 2014-CRB-1146 |
| | : | |
| ANSAR E. ABBASOV | : | (Criminal Appeal from |
| | : | Municipal Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of December, 2015.

. . . . . . . . . .

JOSHUA T. SHAW, Atty. Reg. No. 0087456, Assistant City of Dayton Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. No. 0012093, 7821 North Dixie Drive, Dayton, Ohio 45414
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Ansar Abbasov, appeals from his conviction and sentence for two counts of Domestic Violence and one count of Assault. After the State elected to have Abbasov sentenced for Domestic Violence rather than Assault, the court sentenced Abbasov to 180 days in jail, with 180 days suspended, 30 days of electronic home detention, intensive supervision for one year, including a drug and alcohol assessment, a fine, and court costs.

{¶ 2} In support of his appeal, Abbasov contends that the trial court violated his right of confrontation by refusing to let his attorney question the alleged victim about statements she made.   In addition, Abbasov contends that the judgment of conviction is against the manifest weight of the evidence.

{¶ 3} We conclude that Abbasov was not deprived of his right of confrontation during the trial court proceedings, and that his conviction also was not against the manifest weight of the evidence.   Accordingly, the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

{¶ 4} The trial in this case occurred before a judge, not a jury, and the only witnesses were Ansar Abbasov, Abbasov's wife, Sevinch Mukhamedova, and Dayton Police Officer, Jeffrey Holmes, who was dispatched as a result of a 911 call.[1]

{¶ 5} Sevinch testified that on February 25, 2014, Abbasov asked her for money, and when she said no, Abbasov tried to take money from her pocket.   She then pushed

---

[1] For purposes of convenience, we will refer to the victim as Sevinch.

him away and he tried again to get money from her pocket. Abbasov was also calling her very bad names in front of their children, who were eight, seven, and two years old. At the time, Abbasov and Sevinch were in their home, which was located in Dayton, Ohio.

{¶ 6} Sevinch called 911 and put her cell phone in her pocket. She was in the kitchen when she called, and was crying. Abbasov was in the living room with their three children, about 15 feet away. Abbasov did not see her make the call, and she ended the call. When she returned to the living room, she was going to take the children from the living room. Abbasov hit Sevinch on the left side of her face, and when their son told him not to do that, Abbasov pushed their son against the wall. Sevinch told Abbasov that she was going to call the police, and he said that if she did, he would kill her. Abbasov then stated that he was going to the kitchen to grab a knife. Sevinch testified that she was scared and afraid of what Abbasov would do, and that he wanted money because he needed drugs. She also said she could smell alcohol and that Abbasov appeared to be under the influence of substances.

{¶ 7} At that point, Sevinch took the three children and left the house. After they got in the car, Sevinch called the police again. The police told Sevinch to stop somewhere, and she stopped at the intersection of Troy and Lamar Avenues.

{¶ 8} Officer Holmes indicated that he was dispatched to the house for a domestic violence call. While he was en route, he received an update that the complainant was waiting in her car at an intersection. Holmes went to that location, while two other officers went to the house. When Holmes arrived at the intersection, Sevinch was in the car with her three children. When he made contact, Sevinch was crying hysterically. When Holmes tried to interview her, she would try to tell him about an incident with her husband,

and as she tried to express what happened, she started crying more heavily and shook at times almost uncontrollably. After several minutes, Holmes was able to ascertain that she had gotten into an argument with her husband and that during the argument, he had hit her in the face. Her husband had also threatened to kill her during the encounter.

{¶ 9} Holmes did not see any visible injury on Sevinch or on the children. The children were in the car during the interview, and were calm. The other officers, who went to the home, arrested Abbasov.

{¶ 10} Abbasov told a different version of events. He stated that he had three broken ribs, but had worked that day because they were having money problems. He said he had earned $200 working for a friend. However, the friend did not have the money to pay him that day, and was going to pay him the following day. Sevinch asked Abbasov for the money and began screaming and arguing about why he had not been paid.

{¶ 11} Abbasov testified that at the time he was in the living room playing with the children, and Sevinch was in the kitchen talking on the phone with her cousin. He was ignoring Sevinch, but thought the cousin told Sevinch to call the police. He denied hitting Sevinch or the children, denied going to the kitchen to get a knife, and denied threatening to kill his wife. He stated that when Sevinch left, he thought she was going to get the money he had earned that day. His opinion was that Sevinch was lying and that she had a problem, i.e., he implied that she had a mental problem.

{¶ 12} After hearing the testimony, the trial court found Sevinch more credible, and found Abbasov guilty of all three charges. Following a presentence investigation, the court sentenced Abbasov as noted above. Abbasov timely appealed from his conviction

and sentence.

## II. Alleged Violation of the Right of Confrontation

{¶ 13} Abbasov's First Assignment of Error states that:

The Trial Court Violated Appellant's Right to Due Process as well as His Constitutional Right to Confront His Accusers By Refusing to Permit Defense Counsel to Inquire of Complainant Over Statements She Had Made.

{¶ 14} Under this assignment of error, Abbasov contends that his right of confrontation was violated when the court refused to allow defense counsel to examine Sevinch about a conversation she had with defense counsel.

{¶ 15} The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." "Cross-examination of a witness is a matter of right, but the 'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.' " *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), quoting *Alford v. United States*, 282 U.S. 687, 691, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). "The right of cross-examination includes the right to impeach a witness' credibility." *Id.*

{¶ 16} "A trial court abuses its discretion when it unduly limits cross-examination of the victim, on an issue affecting credibility, when the victim's testimony is vital to the state's case." *State v. Carlson*, 31 Ohio App.3d 72, 73, 508 N.E.2d 999 (8th Dist.1986), citing *State v. Ferguson*, 5 Ohio St.3d 160, 166, 450 N.E.2d 265 (1983). *Accord State*

*v. Ferguson*, 2d Dist. Clark No. 2010-CA-1, 2011-Ohio-6801, ¶ 151.

**{¶ 17}** On the other hand, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on * * * cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Furthermore, " 'the Confrontation Clause guarantees *an opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (Emphasis sic.) *Id.*, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

**{¶ 18}** In the case before us, the following exchange occurred during defense counsel's cross-examination of Sevinch:

> Q. Ms. Mukhamedova, we've met before, haven't we?
>
> A. You called me, yes.
>
> Q. You came to my office, correct?
>
> A. Yes.
>
> Q. After one of the domestic hearings, correct?
>
> A. Yes.
>
> Mr. Shaw:     I am going to object on relevance.
>
> The Court:     What is the relevance, counsel?
>
> Mr. Scaccia: It is relevant because . . .
>
> The Court:     What is the relevance?
>
> Mr. Scaccia: It happened after this occurred?

The Court:    But what is the relevance to this incident, sir?

Mr. Scaccia:  Some of the things, I'm just . . . Foundation.   But some of the things that was said.

The Court:    I will sustain, at this point.

Mr. Scaccia:  Alright.

Transcript of Trial Proceedings, p. 16

{¶ 19} After the trial court sustained the objection, defense counsel did not proffer the substance of the excluded evidence.   However, a proffer was not required.   In this regard, Evid. R. 103(A) provides that:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> * * *
>
> (2) Offer of proof.   In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.   Offer of proof is not necessary if evidence is excluded during cross-examination.

{¶ 20} Accordingly, defense counsel was not required to make a proffer of the evidence.   It would have been helpful, however.   All we can tell from counsel's vague statement is that he was attempting to provide a foundation for some unspecified things that were said.

{¶ 21} More importantly, the State argues that the most glaring error in Abbasov's argument is that the trial court did not foreclose questioning on the point, and that Abbasov had an opportunity to ask further questions if they had a proper basis.

{¶ 22} Upon consideration, we agree with the State. The trial court clearly stated that it was sustaining the objection "at this point." Thus, the defense was not foreclosed from questioning Sevinch further about this topic. Instead of trying to do so, however, defense counsel simply began asking Sevinch unrelated questions about her background and never returned to the issue. Moreover, assuming for the sake of argument that Abbasov was present during Sevinch's discussion with defense counsel, this issue was also never raised during Abbasov's direct examination.[2]

{¶ 23} Accordingly, the First Assignment of Error is overruled.

III. Manifest Weight Argument

{¶ 24} Abbasov's Second Assignment of Error states that:

The Trial Court Committed Prejudicial Error By Entering a Verdict

That Is Contrary to the Manifest Weight of the Evidence.

{¶ 25} Under this assignment of error, Abbasov contends that his convictions for Domestic Violence and Assault are against the manifest weight of the evidence. In this regard, he points to evidence that Sevinch stated that she didn't feel anything after she

---

[2] Parenthetically, we note that if statements had been made to defense counsel, and the witness either denied or could not recall making the statements, defense counsel may have needed to provide extrinsic evidence of the statements. *See, e.g.*, Evid.R. 613(B); *State v. Kemp*, 8th Dist. Cuyahoga No. 97913, 2013-Ohio-167, ¶ 35-36. This raises the possibility of disqualification of counsel if no other evidence were available on the subject and trial counsel, therefore, was a necessary witness. *See* Prof. Cond. R. 3.7; *State v. Ponce*, 2012-Ohio-4572, 977 N.E.2d 1062, ¶ 18-19 (7th Dist.); and *State v. Johnson*, 197 Ohio App.3d 631, 2011-Ohio-6809, 968 N.E.2d 541, ¶ 10-16 (6th Dist.). There is no indication in the record that defense counsel alerted either the State or the court prior to trial of the possibility that defense counsel might need to testify. However, this is a moot point, since defense counsel never attempted to address the subject after the court sustained the State's initial objection.

was slapped, that the investigating officer saw no evidence of injury, and that the children were calm after the incident.

{¶ 26} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 27} We have reviewed the entire record, and find that the convictions were not against the manifest weight of the evidence. As was noted, Abbasov was charged with having violated R.C. 2919.25(A) and (C) (Domestic Violence), and R.C. 2903.13(A) (Assault).

{¶ 28} R.C. 2919.25 provides, in pertinent part, that:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

**{¶ 29}** R.C. 2903.13(A) states that "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." As used in the Revised Code, "[p]hysical harm to persons" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶ 30}** In *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237 (2d Dist.), we rejected a manifest weight argument in connection with a domestic violence charge, noting that a juror could infer that the husband had inflicted minor physical harm on his wife by hitting her in the head. *Id.* at ¶ 62. There was no indication that the wife had any visible injuries in that case. *See also State v. Baker*, 2d Dist. Montgomery No. 22136, 2008-Ohio-3000, ¶ 32 (noting that while the victim "suffered no visible injury, that is not required to prove assault because a mere attempt to cause physical harm is sufficient to complete the offense.") *Accord State v. Beach*, 11th Dist. Trumbull No. 2011-T-0043, 2012-Ohio-298, ¶ 32. *See also State v. Warfield*, 11th Dist. Trumbull No. 2001-T-0079, 2003-Ohio-2366, ¶ 11 (noting that "[t]he fact that there were no visible injuries or that no one else witnessed the assault does not somehow negate [the victim's] testimony. Rather, the jury, as the trier of fact, was obligated to assess the victim's testimony and determine its credibility.")

**{¶ 31}** In addition, "actual physical harm is not required for a successful conviction because the domestic violence statute expressly criminalizes both an attempt and a completed offense." *State v. McNichols*, 4th Dist. Hocking No. 02CA11, 2002-Ohio-6253, ¶ 7. Likewise, the Assault statute also criminalizes an attempt as well as a completed offense. *See* R.C. 2903.13(A).

**{¶ 32}** In the case before us, Sevinch testified that Abbasov hit her on the left side

of her face.  Although Sevinch stated on direct examination that she didn't feel anything when her husband slapped her, it is clear from the context of her comments that she was not focused on her injury or pain, but on getting her children out of the house and away from Abbasov.  She also stated that her face was red after the slap.  Transcript of Trial Proceedings, p. 13.  In addition, Sevinch testified during cross-examination that she left the house "after [Abbasov] hurt me.  After he hit me on my left side."  *Id.* at p. 30.

{¶ 33} In addition, Sevinch testified that Abbasov threatened to kill her if she called the police, and told her he was going to the kitchen to get a knife.  *Id.* at p. 10-11.  At that point, she fled the house with the children.  Sevinch also stated that she was scared of Abbasov and what he could do, and that he was on drugs.  *Id.* at pp. 11, 13, and 19.

{¶ 34} In contrast to Sevinch's testimony, Abbasov claimed that Sevinch began screaming and arguing because he did not bring home any money that day.  He denied hitting or threatening Sevinch, and stated that he thought she had left home to obtain the money his employer owed.

{¶ 35} In concluding that the State met its burden of proof on the charges, the trial court specifically noted that it had weighed the credibility of the witnesses.  Transcript of Trial Proceedings, p. 69.  Even though there were only two witnesses to the alleged crimes, the trial judge was entitled to believe Sevinch.  "Domestic violence is often a private crime, occurring in one's own home," and the fact-finder will often have to choose between the account of the victim or the defendant, either of which it might reasonably believe.  *State v. Blonski*, 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.1997).  *Accord State v. Hufnagel*, 7th Dist. Mahoning No. 12 MA 195, 2014-Ohio-1799, ¶ 17 (observing that "[a] domestic violence conviction can be sustained on the basis of a single

witness and without any physical evidence of visible injuries.") (Citation omitted.)

{¶ 36} We have often stressed that "[i]n reviewing the weight of the evidence, the witnesses' credibility and the weight to be given their testimony are matters primarily for the trier of fact since the trier of fact is in the best position to judge the witnesses' credibility by observing their demeanor." *State v. McGhee*, 2d Dist. Montgomery No. 21368, 2006-Ohio-5979, ¶ 23, citing *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144 (Feb. 22, 2002). Again, while the testimony conflicted, the trial court had a better ability to assess credibility.

{¶ 37} For the reasons just discussed, the Second Assignment of Error is without merit and is overruled.

## IV.   Conclusion

{¶ 38} All of Abbasov's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Joshua T. Shaw
J. Allen Wilmes
Hon. Christopher D. Roberts