**[Cite as *State v. Williams*, 2023-Ohio-4456.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                  Court of Appeals No.  L-23-1022

      Appellee                                          Trial Court No.  CR0202202463

v.

Damar Williams                                          **DECISION AND JUDGMENT**

      Appellant                                         Decided:  December 8, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Francis P. de la Serna, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury trial, defendant-appellant, Damar Williams, appeals the
January 20, 2023 judgment of the Lucas County Court of Common Pleas, convicting him
of domestic violence.  For the following reasons, we affirm the trial court judgment.

# I.     Background

{¶ 2} Damar Williams was charged with committing domestic violence against his wife, B.V., in violation of R.C. 2919.25(A).  Because Williams had two prior domestic-violence convictions, he was charged under R.C. 2919.25(D)(4), making the offense a third-degree felony.  The following evidence was presented at trial.

{¶ 3} B.V. testified that on August 14, 2022, she and Williams visited with her cousin at a campground.  The couple argued and Williams wanted to go home.  B.V. took him home and went back to the campground.  B.V. returned home around 1:00 a.m.  She was very intoxicated and was vomiting.

{¶ 4} Williams wanted B.V. to go fishing with him the next morning, but she was hungover and did not want to go.  Williams went fishing alone.  When he returned home, he and B.V. argued again.  Initially, their argument was verbal, but Williams suddenly punched her in the chest.  B.V. immediately left the house in her vehicle and headed to her grandmother's house.

{¶ 5} B.V. testified that it hurt when Williams punched her, but it did not cause an injury requiring medical attention, and it did not bruise.  She took photographs of her chest around 1:20 p.m., while on the way to her grandmother's house.  Those photographs were taken within five minutes of the assault and showed redness across her chest.

2.

{¶ 6} That evening, B.V. decided to pursue charges against her husband. She called 9-1-1 from her grandmother's house at 6:08 p.m. Because there was no current threat to B.V., the call was deemed low priority, and police did not arrive at her grandmother's house until after midnight on August 16, 2022. By that time, the redness on B.V.'s chest had faded, but she showed officers the pictures she took just after the incident. Officer Lucas Snowberger and Detective Eli McCord were among the officers who interviewed B.V. Their interaction with B.V. was recorded on body worn cameras, and recordings from those cameras were admitted into evidence. Both Officer Snowberger and Detective McCord testified at trial.

{¶ 7} B.V. testified that the assault occurred just after 1:00 p.m.; the police report indicated that it occurred at 3:00 p.m. Detective McCord testified that the time indicated in the police report was a clerical error. He said that B.V. told him that it happened at 1:00 p.m., but he mistakenly wrote 3:00 p.m. on the police report.

{¶ 8} After the state rested, Williams moved for acquittal under Crim.R. 29. He argued that the redness on B.V.'s chest was sunburn, and he claimed that the photograph of her chest was taken at 1:22 p.m., even though the alleged incident had not occurred until 3:00 p.m. The court denied the motion and submitted the matter to the jury. The jury found Williams guilty of domestic violence.

{¶ 9} The court sentenced Williams to 36 months in prison. Because he committed the offense while on postrelease control in another matter, the trial court

3.

imposed the time remaining on that sentence, 792 days, and ordered that those days be served consecutively to the sentence imposed in the present case. Williams's conviction and sentence were memorialized in a judgment entered on January 20, 2023.

{¶ 10} Williams appealed. He assigns the following error for our review.

THE TRIAL COURT ERRORED [sic] WHEN IT CONVICTED MR. WILLAIMS [sic] AS THE STATE FAILED TO MEET ITS BURDEN OF PROOF AND THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## II.      Law and Analysis

{¶ 11} In his sole assignment of error, Williams argues that his conviction was against the manifest weight of the evidence. He argues that there was no evidence that he committed an act "that could knowingly cause harm" because B.V. admitted that she suffered no injury and Officer Snowberger and Detective McCord observed no injury. He suggests that the red mark visible on B.V.'s chest in the photographs is sunburn from the day before when she visited her cousin at the campground.

{¶ 12} Although Williams's assignment of error specifically challenges only the weight of the evidence, it also touches upon the sufficiency of the evidence. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence

4.

in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 13} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

5.

**{¶ 14}** R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(A)(3) defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶ 15}** As to the "physical harm" element, Ohio courts hold that even "[t]he slightest injury is sufficient proof of physical harm for purposes of R.C. 2919.25(A)." *State v. Baxter*, 1st Dist. Hamilton No. C-180575, 2019-Ohio-4855, ¶ 9, citing *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 35 (1st Dist.). *Id.* A victim need not seek medical treatment for her injury. *State v. Summers*, 11th Dist. Ashtabula No. 2002-A-0074, 2003-Ohio-5866, ¶ 31. No visible injury is required. *State v. Spade,* 5th Dist. Delaware No. 08 CAC 04 0017, 2009-Ohio-2004, ¶ 27; *State v. McNichols,* 4th Dist. Hocking No. 02CA11, 2002-Ohio-6253, ¶ 10. And police need not observe any visible injury. *State v. Summers,* 11th Dist. Ashtabula No. 2002-A-0074, 2003-Ohio-5866, ¶ 31. In fact, "R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury" at all, given that "a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family member." *Id.,* citing *State v. Nielsen*, 66 Ohio App.3d 609, 612, 585 N.E.2d 906 (6th Dist.1990) ("R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant

6.

can be convicted of domestic violence for merely *attempting* to cause physical harm to a family member."). *See also Baxter* at ¶ 10; *State v. Jackson,* 2019-Ohio-170, 131 N.E.3d 378, ¶ 59 (3d Dist.); *City of Cleveland v. Mincy,* 2018-Ohio-3565, 118 N.E.3d 1163, ¶ 18 (8th Dist.).

{¶ 16} In *City of Oregon v. Snyder*, 6th Dist. Lucas No. L-07-1424, 2008-Ohio-6537, we recognized that "[a] defendant may be found guilty of domestic violence even if the victim sustains only minor injuries, or sustains no injury at all." *Id.* at ¶ 15. In *Snyder,* the defendant grabbed the victim's shirt collar, shook him, and pushed him in the chest, causing him to lose balance. We affirmed the defendant's domestic-violence conviction even though the defendant's assault caused only redness on the victim's neck, which disappeared before police arrived. Similarly, in *State v. Abbasov*, 2d Dist. Montgomery No. 26470, 2015-Ohio-5379, ¶ 32, the Second District affirmed defendant's domestic-violence conviction even though the victim testified that she felt no pain when her husband slapped her face, but her face was red immediately thereafter.

{¶ 17} Here, B.V. testified that Williams punched her in the chest, it hurt when it happened, and it left a red mark that disappeared before police arrived. Williams emphasized the fact that there was no abrasion or bruise from the punch, but the case law is clear that no visible injury was required. Evidence that Williams punched her and that it hurt was certainly sufficient to support the physical-harm element of his conviction of domestic violence.

7.

{¶ 18} Turning to the mens rea required to convict under R.C. 2919.25(A), "knowingly," where a defendant does not testify at trial, there is often no direct evidence of mental state. In such cases, intent may be determined "from the surrounding facts and circumstances." *State v. Young*, 10th Dist. Franklin No. 12AP-314, 2013-Ohio-1247, ¶ 13.

{¶ 19} A person acts knowingly "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "A defendant need not act with deliberate intent to act knowingly; if the result is probable, then the defendant acts with knowledge." *State v. Kartman*, 7th Dist. Belmont No. 01 BA 65, 2002-Ohio-5189, ¶ 8 (affirming the defendant's conviction even though he argued that he intended only to remove his girlfriend from the vehicle). *See also Baxter*, 1st Dist. Hamilton No. C-180575, 2019-Ohio-4855, at ¶ 11 (affirming defendant's conviction despite his testimony that he did not intend for the victim to get hurt when he shoved her).

{¶ 20} In *State v. Warner*, 2d Dist. Montgomery No. 29498, 2022-Ohio-4742, ¶ 21, the court held that a rational trier of fact could find that "when [the defendant] pushed his wife, he was aware his actions could cause injury, however slight." It emphasized that "[t]he statute does not require that he know that his action would cause [the] particular injury–only that it was likely to cause injury, regardless of its gravity." *Id.*

8.

{¶ 21} Other courts have held similarly. In *State v. Stover*, 8th Dist. Cuyahoga No. 104388, 2017-Ohio-291, ¶ 14, the Eighth District found that it was reasonable to infer that the defendant was aware that "by pushing his mother so hard that she fell to the ground, he would probably cause her some injury, even if only slight and fleeting." In *State v. McNichols*, 4th Dist. Hocking No. 02CA11, 2002-Ohio-6253, ¶ 10, the Fourth District found that a rational trier of fact could conclude that a young girl would probably be injured when being shaken and pushed down by her father. In *Baxter*, 1st Dist. Hamilton No. C-180575, 2019-Ohio-4855, at ¶ 11, the First District found that "[t]he trier of fact could reasonably infer that [the defendant] was aware that his shoving [the victim] into a heavy table with enough force to move the table several feet would probably cause her physical harm." And in *Mincy*, 2018-Ohio-3565, 118 N.E.3d 1163, at ¶ 20, the court found that the victim's testimony that the defendant smacked her on the side of the head was, by itself, sufficient to show that the defendant acted knowingly.

{¶ 22} Here, Williams punched his wife in the chest. As in the cases we have cited, we find that a rational trier of fact could conclude that he was aware that by punching his wife, he would probably cause her some injury. As such, the jury could properly conclude that Williams knowingly caused or attempted to cause physical harm to his wife when he punched her in the chest.

{¶ 23} "Domestic violence is often a private crime, occurring in one's own home, 'and the fact-finder will often have to choose between the account of the victim or the

9.

defendant, either of which it might reasonably believe.'" *Abbasov,* 2d Dist. Montgomery No. 26470, 2015-Ohio-5379, at ¶ 35, quoting *State v. Blonski,* 125 Ohio App.3d 103, 114, 707 N.E.2d 1168 (9th Dist.1997). Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 24} Here, the state presented evidence that (1) Williams delivered a single punch to B.V.'s chest; (2) although lasting only a moment, B.V. felt pain; and (3) within five minutes after being punched, B.V. photographed redness on her chest, which disappeared sometime before midnight. Although Williams suggested at trial that the red mark on B.V.'s chest resembled sunburn, he also highlighted the fact that the redness had faded by the time B.V. spoke with police, arguably undermining his sunburn argument. But regardless of whether the jury believed that Williams's punch caused a red mark, and regardless of whether it was possible that the red mark was actually sunburn, the jury obviously believed B.V.'s testimony that Williams punched her in the chest. Because the jury was in the best position to evaluate B.V.'s credibility, we decline to conclude that Williams's conviction was against the manifest weight of the evidence merely because

10.

the jury believed the state's version of the facts over the defendant's version. *See State v. Haugh*, 6th Dist. Lucas No. L-15-1115, 2016-Ohio-8008, ¶ 48.

{¶ 25} We find Williams's assignment of error not well-taken.

### III. Conclusion

{¶ 26} The state presented sufficient evidence that Williams knowingly caused or attempted to cause injury by punching his wife in the chest. Even the slightest injury can constitute "physical harm." Moreover, R.C. 2919.25(A) also prohibits the "attempt" to cause physical harm, thus, evidence that the victim experienced only momentary pain and temporary redness did not render the evidence insufficient. The jury was in the best position to evaluate the victim's credibility and Williams's conviction was not against the manifest weight of the evidence.

{¶ 27} We find Williams's assignment of error not well-taken and affirm the January 20, 2023 judgment of the Lucas County Court of Common Pleas. Williams is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.