**[Cite as *State v. Thompson*, 2026-Ohio-1491.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                          Court of Appeals No. F-25-008

    Appellee                                       Trial Court No. CR 25000074

v.

Dennis Thompson, Jr.                          **DECISION AND JUDGMENT**

    Appellant                                      Decided:  April 24, 2026

* * * * *

Luke T. Jones, Prosecutor and Allma-Tadema Miller,
Assistant Prosecutor for appellee.

Karin L. Coble, for appellant.

* * * * *

**ZMUDA, J.,**

## I. Introduction

{¶ 1} This matter is on appeal of the judgment of the Fulton County Court of

Common Pleas, following a jury trial. Finding no error, we affirm.

## II. Facts and Procedural Background

{¶ 2} Following an incident on May 15, 2025, in the home that appellant, Dennis Thompson, shared with the victim, A.G., and their children,[1] Thompson was indicted on one count of domestic violence in violation of R.C. 2919.25(A) and (D)(2), a misdemeanor of the first degree and one count of strangulation in violation of R.C. 2903.18(B)(3), a felony of the fourth degree. The matter proceeded to a jury trial, and the following testimony was adduced.

{¶ 3} A.G. testified regarding her fraught relationship with Thompson over the more than ten years they were together. She admitted that she had her own domestic violence charges, with Thompson as victim, referencing an incident in which she wielded a "tree saw" against him. Thompson's online cheating was the major issue between the couple, and A.G. admitted she searched Thompson's phone frequently to uncover evidence of his infidelities, characterizing her need to search the phone as obsessive.

{¶ 4} On the day of the incident, A.G. took Thompson's phone into the home's bathroom to look for evidence of cheating. A.G. testified that Thompson entered the bathroom and grabbed her from behind, one hand on the phone and the other gripping her neck as he pulled her into his body. She testified, "It felt like a long time but I know it wasn't" and "…it hurt. He was squeezing me tight and it took my air away." A.G. did not report the incident right away. After her sister discovered what happened the next day, she

---

[1] Thompson and A.G. share one child together, a son. A.G. also has an older daughter from a prior relationship and Thompson has two children from a prior relationship.

urged A.G. to make a report before calling police herself. After initial examination by EMS, A.G. later went to the hospital for a more thorough examination. In addition to bruising on her jaw, A.G. had a loose tooth near the area that Thompson had pressed with his fingers. The State introduced photographs showing bruising along A.G.'s jaw, taken at the hospital.

{¶ 5} At the time of the incident, A.G.'s teenaged daughter was in her bedroom, across from the bathroom, watching a movie with her boyfriend. Both teens testified at trial. The boyfriend testified that, although the bedroom door was closed, he heard what sounded like a fight between Thompson and A.G. in the bathroom, and asked A.G.'s daughter to turn the volume down. He testified that he heard choking, stating it sounded like A.G. "was trying to breathe but couldn't." He told A.G.'s daughter that A.G. was choking, and the daughter ran and opened her bedroom door. Her boyfriend followed her, stopping at the bedroom doorway.

{¶ 6} A.G.'s daughter testified that she left her bedroom and stood outside the bathroom and saw Thompson "hold my mom with his right hand like that and then I saw her fall to the floor." She added that Thompson was "[c]hoking my mom with his right hand" and indicated by pointing that Thompson's hand was on the front of A.G.'s neck. Her testimony differed from A.G.'s account, however, placing A.G. and Thompson face-to-face and describing the choking as "Darth-Vadering." A.G.'s daughter testified that A.G. fell and did not throw herself to the ground as later claimed by Thompson. After falling, A.G.'s daughter saw A.G. put both hands to her neck and gasp for breath for

3.

about two to three minutes. A.G.'s daughter testified that she yelled at Thompson, saying, "Why the fuck did you just choke my mom." According to A.G.'s daughter, Thompson said, "Fuck you," before walking away.

{¶ 7} A.G.'s sister also testified. She was not present during the incident but testified that she observed bruising on A.G.'s jaw the next day. A.G.'s sister reported the incident to police, and officers initially responded to the sister's house to gather information before proceeding to Thompson's and A.G.'s house.

{¶ 8} The responding officers testified regarding their investigation, following the incident. Patrolman Audrie Hunt testified that she interviewed A.G. and photographed the redness along the right side of A.G.'s neck. Hunt indicated A.G. was treated by EMS at the police station, and the EMTs noted swelling and redness of the neck, recommending A.G. go to the hospital, but A.G. initially declined seeking treatment at the hospital. A.G. was given ice for the swelling. Hunt testified she was relatively new to the police force at the time and had received no training regarding the new strangulation law, enacted in 2023.

{¶ 9} Sergeant Bradley Cash testified that he did have some training and knew to look for physical signs of strangulation by examining the neck, but added, "We can't see what's going on in the inside so we try to get them sent to the hospital or have like medical, EMS or somebody, try to evaluate their neck area." Cash did not see bruising the day he responded, but testified that initial signs do not include bruising, but "we'll get some redness, maybe some swelling" with the bruising often emerging later. As a result,

4.

he testified that police often conduct a follow-up interview to photograph any bruising within two to three days of the incident. However, Cash testified that he was not involved with or present for any treatment received by A.G. Cash testified that he conducted the interview with Thompson and only learned of marks on A.G.'s neck from others involved in the investigation.

{¶ 10} At the close of the State's case, Thompson moved for acquittal pursuant to Crim.R. 29, and the trial court denied the motion.

{¶ 11} Thompson testified as the sole defense witness. He testified that A.G. drank and was obsessed with his cheating, but he only interacted with other partners online, and never physically cheated on the victim. Thompson also testified at length regarding the "tree saw" incident, which was connected to the time he gave A.G. a black eye "by accident."

{¶ 12} As to the strangulation, Thompson testified that he had a hand on his phone, with A.G.'s back to him. He testified that A.G. "dropped her body weight" on purpose, and as she slid down, "that is when my arm made contact with her neck briefly and I let go." He also testified that the door was closed as this happened, and after A.G. was sitting on the floor, the couple's eight-year-old son opened the bathroom door and A.G.'s daughter left her bedroom and approached the bathroom. Thompson testified that A.G.'s daughter accused him of hitting her mom and he denied it. Thompson described the sounds A.G. made as sobbing breaths and not gasps for air. He also testified that A.G. had been drinking earlier in the day, before the incident.

5.

{¶ 13} When pressed on whether A.G. fell or threw herself to the ground, Thompson insisted that he was trying to get his phone and A.G. dead-weight dropped to prevent him from getting his phone, causing him to try to catch her with his left arm. He also insisted that the gasping was just A.G.'s crying and the daughter and boyfriend mistook the victim's crying as gasping for air. When asked about his response to the daughter's accusation of choking her mom, Thompson answered that it was just "high emotions" and anger toward the daughter that made him yell at her.

{¶ 14} At the close of testimony, the defense renewed the Crim.R. 29 motion, and the trial court denied the motion.

{¶ 15} Following deliberation, the jury found appellant not guilty of domestic violence and guilty of strangulation. On September 30, 2025, the trial court sentenced Thompson to a two-year term of community control on the strangulation count, with conditions including successful completion of a Batterer's Intervention Program and no contact with the victim or her residence. The trial court reserved a prison term of six to 18 months.

{¶ 16} Thompson filed a timely appeal of the judgment.

### III. Assignment of Error

{¶ 17} Thompson asserts a single assignment of error on appeal, as follows:

> The verdict was unsupported by sufficient evidence and was therefore a violation of Due Process as guaranteed by the 5th and 14th Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution; the conviction is also against the manifest weight of the evidence.

6.

## IV. Analysis

{¶ 18} In challenging his conviction, Thompson argues that his conviction was against the sufficiency of the evidence, resulting in a violation of his right to due process, and that the conviction was against the weight of the credible evidence. While Thompson challenges sufficiency and weight of the evidence in a single assignment of error, these challenges address different legal issues and require different standards of review.

{¶ 19} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins,* 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Sufficiency concerns whether there is adequate evidence on every element of the offense. *Thompkins* at 386-387; *State v. Messenger,* 2022-Ohio-4562, ¶ 13. The weight of the evidence concerns whether the state satisfied its burden of persuasion regarding the required elements of the offense. *State v. Martin,* 2022-Ohio-4175, ¶ 26, citing *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 19.

{¶ 20} The test of sufficiency is one of adequacy, and a conviction lacking evidence as to every element of the offense is a denial of due process. *Thompkins* at 386-387; *Messenger* at ¶ 13. In considering sufficiency of the evidence, we must view the evidence most favorably for the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard,* 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. We review sufficiency de novo, as a matter of law. *Messenger* at ¶ 13.

7.

{¶ 21} In reviewing a challenge based on the weight of the evidence, however, the appellate court sits as a "thirteenth juror" and considers "the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way." *Thompkins* at 388. Moreover, the "weight" of the evidence is not about the amount of evidence, but instead, concerns whether the credible evidence could induce the jury's belief regarding the necessary issues for the state's case. *Thompkins* at 387.

{¶ 22} The jury found Thompson guilty of strangulation in violation of R.C. 2903.18(B)(3), requiring proof of the following:

> (B) No person shall knowingly do any of the following:
> …
> (3) Cause or create a substantial risk of physical harm to another by means of strangulation or suffocation.

The statute defines strangulation or suffocation as "any act that impedes the normal breathing or circulation of the blood by applying pressure to the throat or neck, or by covering the nose and mouth. R.C. 2903.18(A)(1). "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 23} Thompson first argues that there was no evidence of strangulation, or an impeding of breathing or circulation through pressure applied to the victim's neck. Thompson's argument, however, acknowledges the testimony regarding each element and merely argues that better evidence might have been introduced by the State. More

8.

importantly, Thompson argues that the discrepancy between his own testimony and that of A.G. and her daughter support his argument of error. Thompson points to the lack of expert, medical testimony of strangulation and argues there was no physical evidence of strangulation, discounting A.G.'s testimony of pain and loss of air or the testimony and photographs demonstrating swelling and bruising to the neck area. Thompson further argues that, despite testimony that demonstrated Thompson squeezed A.G.'s neck causing her to gasp for breath and feel pain, the amount of time A.G. claimed she was choked was not long enough to impede someone's breathing or cause a substantial risk of physical harm, an argument that also lacks any supporting expert, medical evidence in the record. Finally, Thompson argues that his own testimony negated any evidence that he acted knowingly.

{¶ 24} In response, the State argues that the evidence introduced at trial demonstrated both strangulation and actual physical harm, satisfying the sufficiency requirement to sustain the conviction. We agree. As acknowledged by Thompson, the State presented evidence that included testimony and photographs of the injury to A.G.'s neck and jaw. We find no authority requiring expert testimony to demonstrate physical harm, defined as "any injury…regardless of its gravity or duration." R.C. 2901.01(A)(3). Furthermore, there is no requirement for medical, expert testimony to demonstrate the element of *serious* physical harm, *State v. Laney,* 2019-Ohio-2648, ¶ 27 (6th Dist.), and "Ohio courts hold that even '[t]he slightest injury is sufficient proof of physical harm[.]'" (Citations omitted) *State v. Williams,* 2023-Ohio-4456, ¶ 15 (6th Dist.) (describing the

9.

"physical harm" necessary for a domestic violence offense). Finally, evidence that Thompson acted knowingly in committing strangulation may be demonstrated "from all the surrounding facts and circumstances, including doing the act itself." *State v. Ward,* 2026-Ohio-305, ¶ 20 (12th Dist.), quoting *State v. Hilton,* 2015-Ohio-5198, ¶ 20 (12th Dist.).

{¶ 25} Therefore, construing the evidence most favorably for the State, we find no merit to Thompson's argument regarding the sufficiency of the evidence.

{¶ 26} Thompson next argues that the weight of the evidence did not support his conviction for strangulation. In support, Thompson argues that his own testimony was more believable than the differing testimony of A.G. and her daughter because A.G. had been drinking the day of the incident and A.G.'s daughter's testimony did not match her mother's version of events. Thompson further argues that the testimony of A.G. and her daughter demonstrated hands on A.G.'s neck for a time too brief to create a substantial risk of physical harm by strangulation. With due consideration of Thompson's argument, we do not find his case to be the "exceptional case in which the evidence weighs heavily against conviction." (Citation omitted) *Knous v. Bauer,* 2023-Ohio-2622, ¶ 36 (6th Dist.).

{¶ 27} First, as to conflicts between A.G.'s testimony and the daughter's testimony, Thompson suggests that neither should have been believed because A.G. testified her back was toward Thompson when he gripped her neck and her daughter testified that A.G. was face-to-face with Thompson when he squeezed her neck for a second before letting go. Thompson also disputed whether A.G.'s daughter saw anything,

10.

because he had testified that the bathroom door was closed until after A.G. had already fallen to the floor, contradicting A.G.'s testimony of an open door. Finally, Thompson argues that his testimony demonstrated that A.G. had been drinking, in contrast to A.G.'s testimony that she drank later in the evening, after the incident.

{¶ 28} Thompson highlights the differences in witness testimony, ignores any corroborating evidence, and argues that his testimony was more credible and therefore the jury lost its way. While we consider the credibility of witnesses in applying the manifest-weight standard, the jury's credibility determinations are entitled to special deference. *State v. Berry,* 2024-Ohio-5970, ¶ 27 (6th Dist.), citing *State v. Fell,* 2012-Ohio-616, ¶ 14 (6th Dist.). "The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts." *Berry* at ¶ 27, quoting *State v. Hill,* 2024-Ohio-2744, ¶ 24 (7th Dist.) (additional citations omitted.). As in this case, where there are discrepancies and "two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible." *Berry* at ¶ 27, quoting *Hill* at ¶ 24 (additional citation omitted.). Thus, this is not that extraordinary case meriting reversal based on a jury that lost its way in determining the credibility of witness testimony.

{¶ 29} Thompson next argues that the evidence demonstrated such a brief contact with A.G.'s neck that the evidence of substantial risk of physical harm by strangulation is not credible. Thompson's argument of only a "brief strangulation" and little physical

11.

evidence, however, is not persuasive. The testimony of A.G., if believed by the jury, established the elements of the offense.

{¶ 30} As previously noted, Thompson was convicted of strangulation in violation of R.C. 2903.18(B)(3), which required proof of strangulation that caused a substantial risk of physical harm, or "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). The newly enacted strangulation law, R.C. 2903.18, elevates certain misdemeanor domestic violence offenses to a felony offense, where the offense involves allegations of strangulation or suffocation.[2] As argued by the State, the evidence demonstrated more than a risk of physical harm because A.G.'s testimony demonstrated actual harm, with the "gravity or duration" of her injury not a factor as defined under R.C. 2901.01(A)(3). Furthermore, courts have rejected Thompson's characterization of "brief strangulation," noting the lethality of strangulation in domestic violence cases and the possibility of serious injury and death. *See State v. Osborne,* 2024-Ohio-2173, ¶ 24, fn 2 (8th Dist.).

{¶ 31} Finally, although the State relied primarily on A.G.'s testimony to demonstrate a substantial risk of physical harm, with only photographs of A.G.'s bruised jaw to show actual injury, the lack of additional physical evidence does not require reversal. "Courts have repeatedly held that a lack of physical evidence, standing alone,

---

[2] *See* Ohio Legislative Service Commission, S.B. 288 134th General Assembly, "Fiscal Note & Local Impact Statement" available at https://www.legislature.ohio.gov/download?key=19959 (accessed April 22, 2026).

does not render a conviction against the manifest weight of the evidence." *State v. Abudu,* 2023-Ohio-2294, ¶ 67 (8th Dist.), citing *State v. Conner,* 2013-Ohio-2773, ¶ 12 (10th Dist.) (additional citations omitted.). Considering the evidence in this case, we do not find the jury lost its way in finding Thompson guilty of strangulation as charged.

{¶ 32} Accordingly, we find Thompson's single assignment of error challenging both the sufficiency and the weight of the evidence not well-taken.

## V. Conclusion

{¶ 33} The judgment of the Fulton County Court of Common Pleas is affirmed. Thompson is ordered to pay the costs of the appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Gene A. Zmuda, J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| | JUDGE |
| Charles E. Sulek, J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

13.