[Cite as *State v. Daniels*, 2018-Ohio-1701.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170145 |
| | | TRIAL NO. 17CRB-1667 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| RUSSELL DANIELS, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 2, 2018

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Christopher Liu,* Assistant City Prosecutor, for Plaintiff-Appellee,

*William F. Oswall, Jr.*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1} Russell Daniels appeals his conviction in the Hamilton County Municipal Court for domestic violence in violation of R.C. 2919.25(A). The victim of the offense was Daniels's wife, Crystal Daniels. For ease of discussion, we will refer to Crystal Daniels as Mrs. Daniels.

{¶2} Daniels challenges his conviction on the grounds that the trial court abused its discretion in not dismissing the case at the state's request, his trial counsel was ineffective for not requesting a jury trial after the court denied the request to dismiss and not objecting to prejudicial evidence, and the conviction was against the manifest weight of the evidence. We find no merit to Daniels's arguments and affirm the judgment of the trial court.

### Relevant Facts

{¶3} Russell Daniels was charged with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The complaint alleged that Daniels had physically harmed his wife by picking her up by her face and pulling her hair.

{¶4} Daniels pled not guilty and proceeded to a bench trial. Prior to trial, the prosecutor informed the trial court that Mrs. Daniels did not wish to proceed because the charge was based on a heated argument with her husband. The prosecutor requested that the case be dismissed for want of prosecution.

{¶5} The trial court invited the investigating officer to speak. The officer confirmed that the charge was based on a verbal argument that turned physical. He further explained that Mrs. Daniels had alleged that Daniels had attempted to break their dog's neck and had followed her when she had left the house to file a police report. After hearing these facts, the trial court denied the state's request to dismiss

2

the charge.

{¶6} Mrs. Daniels and Daniels testified at trial and agreed to the following facts. The Danielses had been married for 22 years, and had three children together. They had been separated for three days when Mrs. Daniels invited him to the marital home to discuss their marriage. The discussion took place in their bedroom, while Mrs. Daniels was lying in bed. Their discussion became heated after he accused her of cheating. Both were screaming and yelling at each other.

{¶7} Each testified to a different version of the physical altercation. Mrs. Daniels testified that her hair was in a ponytail, and that Daniels pulled her hair, but did not hurt her. Then he grabbed her face and chin and raised her face upwards. She explained that the facial grab did not leave any marks, but it hurt. While they were arguing, the dog jumped on the bed and tried to play with Daniels. Daniels lifted the dog by the scruff of its neck and set the dog on the floor.

{¶8} After Daniels grabbed her, they continued the argument downstairs. While they were arguing, their 12-year-old daughter came into the room and slapped Daniels in the face. Daniels moved their daughter, but did not hurt her. Mrs. Daniels asked him to leave, and she went to her car with her daughter and the dog to call 911. She saw his car behind hers briefly and initially assumed that he was following her. When she looked behind her a second time, he was gone. She proceeded to drive to the police station to file a report.

{¶9} During cross-examination, the following exchange occurred between counsel for Daniels and Mrs. Daniels:

> Q. This incident allegedly took place on January 20th of this
> year; is that correct?
> A. Yes.

3

Q. And actually - - correct me if I'm wrong, but January 19th, you actually went to District 3 to inquire about how to file for domestic violence?

A. No, that is [ ] incorrect. * * * I went to District 3 to ask how to keep him off of my work's property because some coworkers felt threatened and my administrator advised me to find out if there was anything I could do to keep him off work's property. They told me no. Unless he comes on the property, then they can call the police.

Q. So you inquired about a protection order?

A. From my work's property, not for myself.

{¶10} The state rested, and Daniels made a Crim.R. 29(A) motion for an acquittal, which the trial court denied.

{¶11} Daniels testified that the argument began when Mrs. Daniels accused him of cheating. Afterwards, he accused her of cheating, and they were both yelling at each other. As he was leaving, she jumped out of the bed and startled him. He threw up his hands and may have hit her face. Then he left to go to his mother's house. He confirmed that he moved the dog off of the bed, and that his daughter slapped him.

{¶12} For its rebuttal case, the state recalled Mrs. Daniels. She testified that she did not remember jumping off the bed toward her husband.

{¶13} After summarizing the evidence, the trial court found Daniels guilty because he grabbed his wife's face, and the grab was not a startled reflex. The court further found that Daniels pulled her head up and caused her pain. The trial court concluded that Mrs. Daniels was "honest" while testifying.

{¶14} The court sentenced him to 180 days in jail, suspended 179 days, and credited the one day he spent in jail. The court sentenced him to 11 months of probation, placed him on 180 days of electronic monitoring, ordered him to complete an anger-management course and imposed court costs. The sentence was stayed pending the resolution of the appeal.

### The Motion to Dismiss

{¶15} In his first assignment of error, Daniels contends that the trial court erred by denying the state's motion to dismiss the case.

{¶16} A trial court's decision to grant or deny a prosecutor's request to dismiss a charge is reviewed for an abuse of discretion. *See State v. Mucci*, 150 Ohio App.3d 493, 2002-Ohio-6896, 782 N.E.2d 133, ¶ 30 (7th Dist.). An abuse of discretion requires trial court action that is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶17} Crim.R. 48(A) provides, "The state may by leave of court and in open court file an entry of dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate." A trial court should grant the state's motion for a dismissal if the request meets the good cause and open court requirements of Crim.R. 48(A). *See Newark v. Williams*, 5th Dist. Licking No. 00-CA-68, 2001 WL 1783087, *3 (Mar. 6, 2001), citing *State v. Sutton,* 64 Ohio App.2d 105, 411 N.E.2d 818 (9th Dist.1979). In making this determination, the trial court can review the information underlying the charges. *See Mucci* at ¶ 32.

{¶18} "Good cause," has been defined as "a substantial reason and one that affords a legal excuse." *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988). The requirement of "good cause" requires "more than a cursory recitation that good cause exists[.]" *Lakewood v. Pfeifer*, 83 Ohio App.3d 47, 51, 613 N.E.2d

1079 (8th Dist.1992).

{¶19} Here, the record reflects that the prosecutor made an oral motion to dismiss the charge, in open court, and informed the trial court that Mrs. Daniels did not wish to pursue the charge. The only explanation the prosecutor gave was that Mrs. Daniels had indicated the charge stemmed from a heated argument with her husband. After the investigating officer recited the allegations that led to the filing of the domestic-violence charge against Daniels, the trial court denied the state's request.

{¶20} We conclude that the trial court acted within its sound discretion in denying the motion to dismiss. Based on the allegations, the complaint was sufficient to charge a domestic-violence offense, and the prosecuting witness was present to testify regarding the allegations. The prosecutor did not provide good cause to dismiss. *See Brown* at 308.

{¶21} Accordingly, the first assignment of error is overruled.

## Ineffective Assistance of Counsel

{¶22} In his second assignment of error, Daniels alleges that his counsel was ineffective for failing to request a jury trial after the court denied the state's motion, failing to object to inadmissible evidence, and eliciting prejudicial testimony.

{¶23} To prevail on an ineffective-assistance-of-counsel claim, Daniels must demonstrate that counsel's performance fell below an objective standard of reasonableness, and he was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With regard to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

{¶24} In order to demonstrate prejudice, Daniels must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different. *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697.

### 1. Failure to request a jury trial

{¶25} Daniels contends that his trial counsel was ineffective for proceeding with a bench trial after the trial court denied the state's motion to dismiss. He further argues that his counsel should have requested a continuance and filed a jury demand after the court heard the allegations and denied the state's request to dismiss the charge. Generally, the decision whether to try a case to a jury or a judge is a trial-strategy decision. *State v. Feltha*, 1st Dist. Hamilton No. C-160574, 2017-Ohio-8640, ¶ 7.

{¶26} Daniels does not explain why the failure to request a jury trial was deficient or allege that he was prejudiced. Absent any explanation about how counsel's performance was deficient, Daniels has not overcome the presumption that counsel's decision was sound trial strategy. *See Strickland* at 689; *Feltha* at ¶ 7.

### 2. Failure to object to inadmissible testimony

{¶27} Here, the state introduced testimony that the Danielses' daughter slapped Daniels in the face while he was arguing with Mrs. Daniels. Daniels argues that testimony was irrelevant and inadmissible because the daughter did not witness the alleged domestic violence, and the slap by the daughter was not relevant to prove the offense. Daniels further argues that he was prejudiced by the testimony because

the trial court stated, while rendering the verdict, that "the fact that the daughter came down and felt the need to slap him, too, that's not exactly helpful."

{¶28} Assuming, without deciding, that the testimony was inadmissible, Daniels has failed to show that there is a reasonable probability that the result of the trial would have been different absent the evidence.

{¶29} Having considered the evidence provided by the state at trial, we do not find that the absence of the testimony would have changed the outcome of this case. The sole issue in this case was the credibility of the witnesses, and the trial court found that Mrs. Daniels's testimony was more credible than Daniels's testimony. Although the trial court mentioned the testimony about the slap during the summation of the evidence, the court made it clear that the verdict was based on its finding that Mrs. Daniels's testimony was honest.

{¶30} Daniels has failed to demonstrate that, but for counsel's failure to object to the testimony, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373.

### 3. Eliciting prejudicial testimony

{¶31} Daniels asserts that counsel was ineffective for eliciting prejudicial testimony from Mrs. Daniels during cross-examination. Defense counsel elicited testimony from Mrs. Daniels that she had gone to the police station at the request of her coworkers to find out how to prevent Daniels from driving in the parking lot at her workplace. A review of the testimony reveals that counsel was attempting to show that Mrs. Daniels had asked the police how to file a domestic-violence charge the day before the argument occurred. Taken in context, it appears that counsel was

attempting to impeach the witness. This was a reasonable trial strategy and did not constitute ineffective assistance of counsel.

{¶32} Daniels has failed to demonstrate that trial counsel was ineffective. Accordingly, we overrule his second assignment of error.

### Manifest Weight of the Evidence

{¶33} In his third assignment of error, Daniels argues that his conviction was against the manifest weight of the evidence. When considering a challenge to the weight of the evidence, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶34} Daniels argues that the face grab was the result of a startled reaction and not a deliberate attempt to harm Mrs. Daniels. He further argues that her bare assertion that it hurt when Daniels grabbed her face was not credible.

{¶35} R.C. 2919.25(A) provides that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). The slightest injury is sufficient proof of physical harm. *See State v. Hustead*, 83 Ohio App.3d 809, 615 N.E.2d 1081 (4th Dist.1992) (slap to the face, which causes no redness, bruising or head movement, is

9

sufficient proof of physical harm); *State v. Neff*, 10th Dist. Franklin No. 92 AP 655, 1992 WL 250253, *2 (Sept. 30, 1992) (the act of grabbing and jerking a victim's arm and causing pain constitutes physical harm); *State v. Johnson*, 2d Dist. Greene No. 88-CA-83, 1989 WL 43040, *4 (Apr. 27, 1989) (the infliction of pain by grabbing the male genitalia is physical harm).

{¶36} At trial, the only disputed element was whether Daniels knowingly caused physical harm to Mrs. Daniels. Mrs. Daniels testified that Daniels grabbed her face, causing her pain.

{¶37} It is well settled law that the trial court was in the best position to determine the credibility of the witnesses. *State v. Railey*, 2012-Ohio-4233, 977 N.E.2d 703, ¶ 14 (1st Dist.). The trial court heard both versions of the physical altercation and specifically found that Mrs. Daniels's testimony was "honest." Based on our review of the record, we cannot say that the court clearly lost its way and created such a manifest miscarriage of justice that we must reverse Daniels's conviction and order a new trial. Accordingly, we overrule his third assignment of error.

### Conclusion

{¶38} Having considered and overruled all of Daniels's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **CUNNINGHAM, J.,** concur.

Please note:

The court has recorded its own entry this date.