[Cite as *State v. Jackson*, 2023-Ohio-785.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210634 |
| | | TRIAL NO. 21CRB-9758 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JONATHAN JACKSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 15, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Alexandra Saunders* and *Connor E. Wood*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Paul Croushore*, for Defendant-Appellant.

**BOCK, Judge.**

{¶1} Defendant-appellant Jonathan Jackson appeals from the trial court's judgment convicting him, following a bench trial, of domestic violence in violation of R.C. 2919.25(A).

{¶2} In two assignments of error, Jackson challenges the sufficiency and the weight of the evidence supporting his conviction and asks this court to amend the definition of "physical harm" in R.C. 2901.01(A)(3) so that it does not encompass trivial disputes between family members. Following our review of the record, we find that Jackson's conviction for domestic violence was supported by sufficient evidence and was not against the manifest weight of the evidence. And as it is the role of the legislature, rather than this court, to set forth the definition of physical harm, we decline Jackson's invitation to amend that definition. Accordingly, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶3} The state charged Jackson with domestic violence in violation of R.C. 2919.25 for knowingly causing physical harm to his wife, Christin Jackson.[1]

{¶4} At trial, Christin testified that on the day of the offense, Jackson burst into their bedroom in the home where they both resided and began questioning her about something on her phone. Christin stated that Jackson's eyes were red, he was aggressive, and that he had "this posture, this disposition when he's about to go into a rage." Jackson repeatedly demanded Christin's phone. Christin testified that she was lying on the bed with her phone, and that when she did not provide her phone to

---

[1] We refer to Christin Jackson as Christin throughout this opinion, as she and Jackson have the same surname.

Jackson, "he started jerking me, and he knocked me right out of bed." After Christin curled into a ball on the floor, Jackson tackled her and jumped on her back. Christin told the court that Jackson hit the backs of her arms, grabbed and squeezed her arms, and scratched her across the chest while attempting to grab the phone.

{¶5} Christin called for help from her son J.J.1, who was in the basement with his brother. She heard the children come upstairs and then heard Jackson tell them to get out. Jackson ultimately retrieved Christin's phone. She used their home's landline to call her mother and then the police. The police responded to her home, but filed no charges that night. Christin testified that she went to the police station with her father the following day to file charges against Jackson. While testifying, she identified photographs depicting the injuries she had received in the altercation with Jackson, including bruising on her arm and a scratch on her chest. She stated that the bruises and scratching hurt and that her injuries lasted approximately one and a half weeks.

{¶6} J.J.2, the son of Jackson and Christin, testified that he recalled a time when his parents had argued over his mother's use of an application on her phone. According to J.J.2, he and his brother J.J.1 were in the basement when they heard their mother calling for help. He testified that he and J.J.1 went upstairs, where he saw Jackson on top of Christin. J.J.2 testified that Jackson turned around, shut the door, and told them to get out. He then saw Jackson exit from the room with Christin's phone.

{¶7} Christin's father, Clyde Dubois, Jr., testified that he spoke to Jackson the morning after the altercation. During that conversation, Jackson admitted that he and Christin had "got into it" over something on Christin's phone and that he had grabbed Christin and held her down. Dubois further testified that, as a former police

officer, he did not understand why the responding officers had not filed charges against Jackson. He and Christin went to the police station the day after the incident, where Christin filed a complaint against Jackson.

{¶8} Jackson presented testimony from Cincinnati Police Officer Ryan Covrett, who responded to the Jacksons' home after receiving Christin's emergency call. Covrett acknowledged that no charges were filed against Jackson by the responding officers, but he was unable to explain the reason behind this decision. He explained that he was the cover officer on that call. Thus, his responsibility was to ensure the safety of the primary officer at the scene.

{¶9} Jackson testified in his own defense. He explained that he suspected Christin of having an affair and that he wanted to see communications on her phone. According to Jackson, he and Christin were standing and facing each other when he first reached for her phone. Christin then turned her back to him, dropped to the floor, and cradled her phone to her stomach. Jackson testified that he reached down by her bosom and stomach to grab the phone. He denied attempting to cause Christin harm, and he stated that he did not hit, punch, choke, squeeze, or grab her.

{¶10} The trial court found Jackson guilty of domestic violence. It imposed a suspended sentence of 180 days of imprisonment, a period of community control, a fine, and court costs. As part of the community control, the trial court ordered Jackson to complete the Transform program and to have no contact with Christin.

{¶11} Jackson now appeals.

*Sufficiency and Weight*

**{¶12}** In his first assignment of error, Jackson argues that his conviction for domestic violence was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶13}** In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶14}** Jackson was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." As set forth in R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." And physical harm is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶15}** Christin testified that Jackson, while trying to take her phone, knocked her out of bed, hit the back of her arms, grabbed and squeezed her arms, and scratched her across the chest. This testimony, viewed in the light most favorable to the

prosecution, was sufficient to establish the elements of domestic violence beyond a reasonable doubt. *See Walker* at ¶ 12.

**{¶16}** Jackson argues that he had no intent to harm Christin and that the two were merely wrestling over her phone. But while Jackson may not have intended to harm Christin, he intended to take her phone, to hit, grab, and squeeze her arms, and to scratch her chest. And the relevant inquiry is not whether Jackson intended to harm Christin, but whether he acted knowingly. The record establishes that Jackson was aware that his conduct would probably cause a certain result, specifically physical harm to Christin.

**{¶17}** We further hold that Jackson's conviction was not against the manifest weight of the evidence. As the trier of fact, the trial court was in the best position to judge the credibility of the witnesses. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Shepard*, 1st Dist. Hamilton No. C-190747, 2021-Ohio-964, ¶ 62. It was entitled to believe Christin's testimony that Jackson hit, grabbed, and squeezed her arms and scratched her chest, and to reject Jackson's testimony that he grabbed the phone from Christin without hitting or grabbing her or otherwise causing her harm. The trial court's credibility determination was supported by J.J.2's testimony that he saw Jackson on top of Christin and by Dubois's testimony that Jackson admitted to grabbing Christin and holding her down, which corroborated Christin's testimony.

**{¶18}** Jackson stresses the fact that the responding officers elected not to file charges against him and that the complaint against him was not filed until Dubois, a former police officer, took Christin to the police station. This argument is irrelevant to an analysis of whether Jackson's conviction was supported by the sufficiency and the

weight of the evidence. The testimony presented at trial was not impacted by the timing of the filing of charges. Regardless of when the charges were filed or by whom, the state was required to prove the elements of the offense beyond a reasonable doubt.

{¶19} The first assignment of error is accordingly overruled.

### *Definition of Physical Harm*

{¶20} In his second assignment of error, Jackson argues that "the definition of 'physical harm' has been so diluted that it requires a correction so as not to encompass trivial disputes between family members to which legal disabilities subsequently apply." He contends that under the current definition of physical harm, any domestic argument in which one party touches the other with any force will be turned into a criminal offense.

{¶21} As set forth above, the legislature has defined the term physical harm in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." This court has consistently applied this definition, explaining that "[t]he slightest injury is sufficient to prove physical harm." *State v. Thornton*, 1st Dist. Hamilton Nos. C-210629, C-210630, C-210631 and C-210632, 2022-Ohio-3452, ¶ 30, citing *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 35 (1st Dist.).

{¶22} It is the role of the legislature to write the laws. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8. Unless the language of the law is found to be ambiguous, which is not alleged in this case, it is the role of this court to apply the law as written. The legislature may reconsider the existing definition of physical harm if it chooses to do. But until then, this court must apply the law as written.

**{¶23}** The second assignment of error is overruled, and the judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.