[Cite as *State v. Johnson*, 2024-Ohio-2572.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230373 |
| | | TRIAL NO. B-1602422 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| KEVIN JOHNSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: July 5, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Elizabeth Miller*, Ohio Public Defender, and *Patrick T. Clark,* Assistant Public Defender and Managing Counsel, for Defendant-Appellant.

**KINSLEY, Judge**.

{¶1} Defendant-appellant Kevin Johnson appeals the judgment of the Hamilton County Court of Common Pleas denying his R.C. 2953.21 petition for postconviction relief. Because we hold that the common pleas court did not act unreasonably in denying the petition where Johnson failed to demonstrate that the state knowingly presented false or misleading testimony regarding the identification of Johnson's fingerprint on a plastic bag containing cocaine and where trial counsel's performance was not deficient in challenging that testimony at trial, we affirm the lower court's judgment.

## Background

{¶2} In 2016, Johnson was indicted for possession of and trafficking in cocaine found in his brother's house, which he was helping to rehab, and indicted for possession of and trafficking in cocaine found in the car Johnson had been driving after leaving his brother's house. The car, a Honda sedan, belonged to a female relative, but both Johnson and his brother drove the car.

{¶3} Johnson's brother's house had been under surveillance for suspected drug activity. On the day Johnson was arrested, police had earlier observed a man, carrying a brown bag, enter and leave the house in a short amount of time. After stopping this person, police discovered a large amount of drugs in the man's bag. Later that day, police observed Johnson drive up to his brother's house, use a key to enter the home, and ten minutes later, exit from the house, lock the door, and drive off in the Honda sedan. Prior to stopping Johnson, a police officer saw Johnson look in his rear-view mirror, notice the marked cruiser behind him and then bend over as if reaching beneath the driver's seat. During the stop, when asked where he had been coming from, Johnson failed to mention his brother's house. A police dog that circled the car at the stop alerted to drugs by the driver's side window. Cocaine was found in the map pocket behind the front passenger seat and underneath the driver's seat. The

cocaine under the driver's seat was in a vacuum-sealed bag. The vacuum-sealed bag was inside a Walmart plastic bag, which had then been placed inside a Menards plastic bag. A latent fingerprint lifted from the Menards bag was identified as Johnson's left thumbprint. Two other fingerprints identified as belonging to Daryl Jones and an unidentified partial palm print were also found on the Menards bag.

{¶4} At trial, Johnson's brother testified that he had pled guilty to offenses he had been charged with relating to the drugs found in his house. When he was asked if the drugs found in the car belonged to him, Johnson's brother asserted his Fifth Amendment privilege against self-incrimination. In his own defense, Johnson testified that (1) he did not know the drugs were in the car, (2) he did not place the drugs in the car, (3) he had access to his brother's house because he had been renovating it, and (4) his brother had recently used the car where the cocaine had been found under the driver's seat.

{¶5} Officer Kimberly Horning, a criminalist with the Cincinnati Police Department, testified on behalf of the state as a fingerprint expert. Prior to her testimony, Johnson objected to her testifying as an expert because he had not received an expert report from the state and was unaware that Horning would be testifying as a fingerprint expert. After the trial court had determined that an expert report had been provided to Johnson, it conducted a *Daubert* hearing outside the presence of the jury. During that hearing, Horning discussed her training and experience in fingerprint analysis, which included completing courses offered by the International Association of Identification ("IAI"). On cross-examination, defense counsel asked Horning if she was familiar with the National Academy of Science's ("NAS") 2009 report entitled "Strengthening Forensic Science in the United States: A Path Forward," and the Scientific Working Group on Friction Ridge Analysis, Study and Technology ("SWGFAST") guidelines. Horning responded that she was aware of these organizations and their purposes, but she had not read the 2009 NAS report and was

not familiar with the SWGFAST guidelines. At the conclusion of the hearing, the trial court determined that Horning was qualified to testify as an expert.

**{¶6}** At trial, Criminalist Horning testified that she used the ACE-V[1] method to analyze fingerprint evidence in this case. She explained that she had used cyanoacrylate fuming to retrieve "prints of value" from the Menards plastic bag found in the car. Prints of value are those prints where "the friction ridge detail is observable" and able to be photographed. Using that process, Horning was able to obtain a latent print from the Menards bag, which she photographed and uploaded to the Automated Fingerprint Identification System ("AFIS"). After she determined "the points on the print, the ridge event details in the print that make it unique," she ran a search on AFIS for known prints that have similar friction-ridge detail. The search returned 20 hits, with Johnson as the first. Horning then compared the ridge details on the latent print to Johnson's known fingerprints. She testified she was able to identify between 13 and 20 matching identification points or features, and identified the latent print as Johnson's left thumb. This conclusion was then "blindly verified" by another fingerprint analyst in her department. When asked if her process for identifying a print was subjective, she said, "I wouldn't call it subjective at all. I mean, these have to be blindly verified by a second criminalist." On cross-examination, defense counsel asked Horning about the subjective nature of the ACE-V method and Horning ultimately admitted that her determination as to which ridge-event details on the latent print she compares with a known print is subjective.

**{¶7}** On redirect, Horning explained that although fingerprints between people may have similar patterns, no two fingerprints are the same—even between siblings who are twins. When asked why protocol did not dictate that she compare the latent print lifted from the Menards bag to Johnson's brother's known prints, she

---

[1] ACE-V stands for analysis, comparison, evaluation, and verification.

explained, "Once I made an identification[,] I'm one-hundred percent sure that this is Kevin Johnson's prints. There would be no reason to look at another print because that would be contrary to how fingerprints work [as] they're completely unique to an individual." She also testified that in her department a minimum of eight matching features was necessary to make an identification of a latent print.

{¶8} At the conclusion of the trial, the jury found Johnson not guilty of the charges related to the drugs found in his brother's house but guilty of trafficking in and possession of the cocaine found in the car. The two counts were merged for sentencing, and the state elected to proceed on the trafficking count. The trial court imposed the mandatory 11-year prison term required by the major-drug-offender specification attached to the charges related to the drugs found in the car.

{¶9} This court affirmed Johnson's conviction in *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, *appeal not accepted*, 157 Ohio St.3d 1563, 2020-Ohio-313, 138 N.E.3d 1156, overruling his six assignments of error, including his assignment challenging Horning's testimony. We held that the trial court had properly qualified Horning as an expert in fingerprint analysis based on her specialized knowledge, skill, training, education, and experience, and thus, did not err in admitting her testimony. *Id.* at ¶ 44.

**Postconviction Proceedings**

{¶10} Johnson challenged his conviction in a timely-filed petition for postconviction relief, asserting three grounds for relief. First, Johnson maintained that the state relied on false and misleading evidence to secure a conviction. Specifically, Johnson argued that Horning's testimony presented the method of latent-print comparison as an "unbiased and objective process" or "not a subjective process," and that it was misleading for her to testify that she was "100% certain" that the latent print found on the Menards bag was Johnson's when national forensic organizations recommend against using such language. Second, Johnson argued that his trial

5

counsel was ineffective in failing to challenge Horning's testimony by cross-examining her on publications from forensic organizations that indicate that latent-print analysis is not a "scientific method" and recommend that analysts not use language indicating absolute certainty in their identifications. Finally, Johnson also argued that his counsel was ineffective in failing to request jury instructions discussing error rates in latent-print analysis. In support of these claims, Johnson submitted the 2009 NAS report, the SWGFAST guidelines, the President's Council of Advisors on Science and Technology ("PCAST") report, and the affidavit of Michele Triplett, an IAI-certified latent-print examiner. Johnson interpreted this evidence to show that latent-print analysis, a feature-comparison method, involves analysts making subjective determinations as to what features to compare, that a feature-comparison method is not a "scientific method," and that forensic organizations recommend that analysts not use absolute-certainty language in communicating their identifications.

{¶11} After reviewing Johnson's petition, the common pleas court denied it on the basis of res judicata. On appeal from that determination, we reversed the lower court's judgment holding that Johnson's claims were not barred by res judicata and that he was entitled to an evidentiary hearing on those claims. *State v. Johnson*, 1st Dist. Hamilton No. C-210381, 2022-Ohio-1739. Consequently, on remand, the common pleas court held an evidentiary hearing at which Michele Triplett, an IAI-certified latent-print examiner, testified as well as Johnson's trial counsel.

{¶12} At the hearing, Triplett testified that although rare errors do occur, fingerprint evidence is very reliable. She indicated that although there have been recent studies on error rates in fingerprint identification, this is a newer and developing area of research. She explained that the 2009 NAS report had indicated that the feature-comparison method of analyzing fingerprint evidence is not a "scientific method" but that that method can be objective when the agency analyzing the fingerprint evidence has clear guidelines for the analysts to follow. Finally, she

testified that forensic organizations recommend that when analysts communicate an identification, they should rely on objective data rather than their own experience and should avoid indicating they are "100% certain" of the identification. In Triplett's view, such a statement may be misleading "because some courts may hear that as a hundred percent accurate."

{¶13} Johnson's trial counsel also testified at the hearing, although he could not recall much. But he explained that he had not been expecting any testimony from a fingerprint expert because the state had not provided him with an expert report. He further testified that he did not ask for a continuance for Johnson to retain his own fingerprint expert because the trial court had only indicated that it would continue the trial for day or two and that was not enough time for Johnson to locate, retain, and prepare for an expert to testify. When asked why he did not cross-examine Horning on the 2009 NAS report or the voluntary recommendations set forth in the SWGFAST guidelines, trial counsel explained that during the *Daubert* hearing he had asked Horning about those items and, although she had heard of those organizations, she specifically stated she was neither familiar with the 2009 NAS report nor the voluntary guidelines set forth by SWGFAST. Finally, at the hearing, trial counsel maintained that he had challenged Horning's testimony by emphasizing, through cross-examination, that Horning could not date when Johnson's fingerprint was left on the Menards bag and that there were prints belonging to others found on the bag.

{¶14} After the hearing, the common pleas court denied Johnson's postconviction claims. It found that the state did not rely on false and misleading evidence where Horning had been properly qualified as an expert in fingerprint identification and that Triplett's testimony did not demonstrate that Horning's testimony was actually false or misleading where Triplett acknowledged that the standards on fingerprint evidence continue to change, fingerprint evidence is reliable with an almost nonexistent error rate, and where no errors in Horning's identification

were demonstrated. The common pleas court also found that trial counsel was not ineffective in failing to request specific jury instructions or by failing to question Horning on the NAS report or recommended guidelines, where counsel questioned Horning on the subjectivity of fingerprint analysis and where Horning admitted "to the subjectivity of her analysis of the fingerprint evidence."

**Denial of petition not an abuse of discretion**

{¶15} Johnson now appeals, arguing in a single assignment of error, that the lower court abused its discretion by denying Johnson's petition for postconviction relief. We review the lower court's decision denying Johnson's petition for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. An abuse of discretion entails an unreasonable, arbitrary or unconscionable decision. *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, ¶ 21. Generally, a reviewing court should not overrule the trial court's decision on a petition for postconviction relief that is supported by competent and credible evidence. *Gondor* at ¶ 58.

{¶16} With respect to his first ground for relief, Johnson argues that the state relied on false and misleading evidence to secure his conviction. The state violates a criminal defendant's right to a fair trial by knowingly securing a conviction with false or misleading testimony or by allowing false or misleading testimony to go uncorrected. *See Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). To establish a due process violation based on the prosecutor's failure to correct false or misleading testimony, a petitioner must show that "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz v. Lafler*, 568 F.3d 577, 583-584 (6th Cir.2009).

{¶17} Johnson argues that Triplett identified several false or misleading statements made by the state's fingerprint expert, including Horning's testimony that the ACE-V method for identifying latent prints was objective, that she was "100%

certain" that she had made a match between Johnson's print and the latent print on the Menards bag, and that she had never made an error. Johnson seems to argue that the overarching impact of these statements created a misleading impression that Horning's identification was unduly reliable.

{¶18} But, to succeed on his due process challenge, Johnson must prove that the state knew it was creating that false impression. He has not done so here. In addition to a general lack of evidence about what the state knew about the field of fingerprint identification at the time of trial, three specific pieces of testimony compel this conclusion. First, at the evidentiary hearing, Triplett could not say whether Horning was overstating the reliability of her identification because she did not review Horning's identification. We decline to impute to the state an awareness of unreliability that Johnson's own expert did not identify. Second, although initially denying that the ACE-V and feature-comparison methods she used to identify Johnson's fingerprint on the Menards bag were subjective, Horning herself eventually admitted at trial that her specific determination as to what features were observable and able to be compared between the latent print and Johnson's known prints was a subjective determination. Thus, Horning's own testimony negated any misleading impression the jury may have had about the testing measures she used. Third, and finally, Horning only used language of absolute certainty when explaining why she did not compare the latent print on the Menards bag to Johnson's brother's prints; she did not profess to be absolutely certain when identifying the latent print as Johnson's to the jury. Instead, she detailed her observation of 13 matching features between the latent print and Johnson's known prints to support her identification.

{¶19} Given this testimony, there was competent, credible evidence to support the lower court's decision that the state did not knowingly present false or misleading evidence to secure Johnson's conviction for drug trafficking. We therefore cannot say that the common pleas court acted unreasonably in denying this claim.

**{¶20}** In his next two grounds for relief, Johnson argues that his trial counsel was constitutionally ineffective by failing to cross-examine Horning at trial on materials from certain forensic organizations that counsel had referenced during the *Daubert* hearing and for failing to request a jury instruction about error rates in analyzing fingerprint evidence.

**{¶21}** To prevail on a postconviction claim of ineffective assistance of counsel, the petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the petitioner must demonstrate that but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. *See Strickland* at 687; *Bradley* at 141-142. The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697; *State v. Daniels*, 2018-Ohio-1701, 111 N.E.3d 708, ¶ 24 (1st Dist.).

**{¶22}** With respect to Johnson's argument that his counsel was ineffective in not cross-examining Horning on certain documents from forensic organizations, including the 2009 NAS report and the SWGFAST recommendations, trial counsel testified at the evidentiary hearing that he elected not to pursue this avenue of cross-examination because Horning had testified at the *Daubert* hearing that she was unfamiliar with those specific documents. Instead, trial counsel opted to question Horning on her experience in analyzing fingerprint evidence and whether that process was subjective instead of "objective," as she had initially claimed.

**{¶23}** Given Horning's unfamiliarity with the documents Johnson identifies, we cannot say that trial counsel's choice to refrain from cross-examining her about them was strategically unreasonable. At best, based on her testimony at the *Daubert*

hearing, Horning would have indicated that she had little to no knowledge of the treatises or their recommendations, and Johnson had no expert of his own to explain why her unfamiliarity was problematic. We fail to see how procuring answers about an expert's lack of knowledge constitutes a strategically unreasonable decision when no other evidence at trial would contextualize why the witness should have been aware of the documents or why the documents were important to the witness's testimony. *See, e.g., In re C.W.*, 3d Dist. Wyandot No. 16-09-26, 2010-Ohio-2157, ¶ 27 (holding that appellate courts should avoid scrutinizing decisions not to pursue a particular line of questioning on cross-examination).

**{¶24}** We also cannot say that trial counsel's decision not to request jury instructions referencing error rates in analyzing fingerprint evidence was unreasonable where Johnson's own fingerprint-analyst witness, Triplett, testified that error-rate study in fingerprint identification is a new, developing area of research and that errors in fingerprint identification are generally rare. *See, e.g., State v. Hayes*, 5th Dist. Muskingum No. CT2022-0021, 2023-Ohio-1008, ¶ 31 (holding that the decision regarding whether to request a jury instruction is typically one of trial strategy).

**{¶25}** Because we hold that trial counsel's performance was not deficient in refraining from cross-examining Horning on certain documents from national forensic organizations and refraining from requesting a jury instruction on error rates, we cannot say that the common pleas court acted unreasonably in denying these two claims.

**{¶26}** Concluding that there was competent, credible evidence supporting the lower court's decision denying Johnson's petition, we overrule Johnson's single assignment of error. Accordingly, the judgment of the common pleas court is affirmed.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.