[Cite as *Cleveland v. Shaker Hts. Apts. Owner, L.L.C.*, 2026-Ohio-737.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                                 No. 115214

    v.                           :

SHAKER HEIGHTS APARTMENTS
OWNER LLC,                           :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 5, 2026

---

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2024-CRB-001655

---

### *Appearances:*

Mark Griffin, Cleveland Director of Law, William H. Armstrong, Jr. and Russ Gates, Assistant Directors of Law, *for appellee.*

Powers Friedman Linn, PLL, and Rachel E. Cohen, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Shaker Heights Apartments Owner, LLC, ("SHAO") appeals the Cleveland Municipal Court, Housing Division's journal entries denying the City of

Cleveland's (the "City") motion to dismiss and sentencing SHAO to three years of community-control sanctions after it pled no contest to eight counts of failure to comply with the City's building code in violation of Cleveland Codified Ordinances ("CCO") 3103.25(e). For the following reasons, we reverse the trial court's judgment and remand this case with instructions to grant the City's motion for leave to file a dismissal entry pursuant to Crim.R. 48(A) and R.C. 2941.33.

## I.    Facts and Procedural History

{¶ 2}    On March 5, 2024, the City filed a misdemeanor criminal complaint against SHAO concerning property SHAO owns located at 12701 Shaker Blvd. (the "Property"), a 119-unit apartment building. The complaint alleged 39 counts of failure to comply with a notice of violation concerning the Property – one count for each day between December 4, 2023 and January 11, 2024. Specifically, the complaint alleged that the boiler at the Property was inoperable and "the supply of heat in this structure is inadequate."

{¶ 3}    On August 22, 2024, the City filed a motion for leave to dismiss the complaint under Crim.R. 48(A) after the City's inspector, Karen Harris ("Harris"), determined that the Property "was substantially in compliance . . . with the City's codes on or about December 15, 2023." According to the City's motion, Harris indicated "that she would be unwilling to state the contrary." On October 8, 2024, the court held a hearing at which it denied the City's motion and journalized this denial on October 31, 2024.

{¶ 4} The City and SHAO negotiated a plea agreement in which SHAO would plea guilty to four counts of failure to comply and the City would dismiss the remaining counts. At a case-management conference, held on the record, it was noted that the Property "was in compliance shortly after the citation was issued." The prosecutor offered to give the court "more detail" about the compliance but the court stated, "we can save it for the change-of-plea date." The court further insisted that the Property was not in compliance, although it is unclear on what information the court based this conclusion. The court rejected the plea agreement, stating, "And the Court has every right to reject a plea that is presented, whether both parties agree or not. That's in this Court's jurisdiction, and this is not going to be looked at as an abuse of power because I'm doing something reasonable."

{¶ 5} The court held another hearing on April 3, 2025 at which SHAO pled no contest to eight counts of failure to comply and the City dismissed the remaining charges. On May 5, 2025, the court sentenced SHAO to a $2,000 fine and three years of community-control sanctions. The court journalized this sentence on May 14, 2025 and issued 15 separate "orders" as part of the community-control sanctions.

{¶ 6} SHAO appeals raising the following assignments of error for our review:

I. The trial court erred by failing to grant the City's Motion to Dismiss.

II. The trial court's conditions of community control are unwarranted by law, do not relate to rehabilitation or the underlying offense and are not narrowly tailored/are overbroad.

III. The trial court erred by imposing community control sanctions upon a limited liability company.

IV. The trial court erred when it fined defendant in excess of the maximum fine for first degree misdemeanors.

## II. Law and Analysis

### A. Motion for Leave to Dismiss this Case

#### 1. Standard of Review

{¶ 7} We review a trial court's ruling on whether to grant leave for dismissal of a case under an abuse-of-discretion standard. *See generally State v. Thompson*, 2024-Ohio-1285, ¶ 18 (8th Dist.). An abuse of discretion is "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 8} This court has held that there are two discretionary components to dismissal of a criminal complaint: "first, that the prosecuting attorney has the discretion 'to determine when and which charges should be dropped,' . . .; [and] second, that the court has the discretion to decide whether to grant leave to allow dismissal of an indictment." *Cleveland v. Primm*, 2017-Ohio-7242, ¶ 5 (8th Dist.), quoting *State v. Jones*, 2015-Ohio-1818, ¶ 31 (8th Dist.). "The court's discretion, however, is limited by the separation of powers — the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the prosecuting attorney." *Id.*

### 2. Crim.R. 48(A)

{¶ 9} Pursuant to Crim.R. 48(A), a prosecutor "may by leave of court and in open court file an entry of dismissal of an indictment . . . or complaint and the prosecution shall thereupon terminate."

### 3. R.C. 2941.33

{¶ 10} Pursuant to R.C. 2941.33, a prosecutor "shall not enter a [dismissal] in any cause without leave of the court, on good cause shown, in open court." Good cause is not defined in this statute, but Ohio courts have used the following definition in conjunction with dismissal of an indictment: good cause is a "'[s]ubstantial reason, one that affords a legal excuse.'" *State v. Brown*, 38 Ohio St.3d 305, 308 (1988). *See also Lakewood v. Pfeifer*, 83 Ohio App.3d 47, 51 (8th Dist. 1992) citing *Brown* ("[I]nsufficiency of proof has always been regarded as good cause for the [dismissal] of an indictment, . . . and the state must state in the record the nature of the insufficiency."); *State v. Daniels*, 2018-Ohio-1701, ¶ 18 (1st Dist.) ("A trial court should grant the state's motion for a dismissal if the request meets the good cause and open court requirements . . . .").

### 4. Analysis

{¶ 11} In its August 22, 2024 motion for leave to dismiss the complaint, the City made the following arguments in support of good cause for dismissal:

> On or about November 3, 2023, . . . Harris inspected the [Property and] found that the boiler was inoperable and that the building had insufficient heat throughout. . . .
>
> On December 4, 2023, . . . Harris inspected the [Property] and found that work was being done to rectify the violation . . . . [SHAO] had

retained a contractor, and that contractor was working to remediate the violation by replacing multiple risers, but this required the boiler to be off for six hours a day. [] Harris noted these events and did not seek to prosecute [SHAO] while work was being done.

On December 15, 2023, . . . Harris returned to the [Property]. She noted that she spoke with management, that the heat was on, and that six units needed new valves installed to control the heat system. [] Harris noted that progress was being made and declined to bring charges against [SHAO.]

On January 11, 2024, . . . Harris inspected the [P]roperty again, and this time she found no progress between visits. Her notes reflect that summons to be issued by "directive of Bureau Manager Kevin Franklin" and that the boiler was not operating on this date, so there was no heat in the building. This inspection led to prosecution.

On January 16, 2024, . . . Harris inspected [the Property] to follow up on [the violation] for a final time. At this inspection, . . . Harris noted that the heat was working in the building, but also that "some units need heat, because parts are needed." [] Harris found that work was in progress as a result of this inspection; however, prosecution had already commenced.

At pretrial in this matter on June 3, 2024, . . . Harris appeared and discussed this matter with counsel for the City and [SHAO]. She insisted that the [P]roperty was substantially in compliance, and that she would be unwilling to state the contrary. The City asserts that . . . Harris' notes indicate steady progress was being made until early January, and by mid-January the issue that led to a finding of no heat had been resolved by [SHAO]. [The inspections], while close in time, indicate that this issue was not being neglected by [SHAO]. Additionally, taken together, [the inspections] indicated that [SHAO] was in substantial compliance with the City's codes on or about December 15, 2023.

Finally, the City notes that [this] violation notice . . . has not been closed. [] Harris has not followed up since January 16, 2024, and at that point it appeared [SHAO] was in substantial compliance. As it is currently summer, a follow-up would likely have to wait until the weather gets colder.

**{¶ 12}** The court held a hearing on October 8, 2024 on the City's motion for leave to dismiss. At this hearing, the prosecutor stated that Harris and he both believed that SHAO "was doing their best to get into compliance with the needed repairs to its boiler system, and that they were waiting and working on getting parts together to make — ." At this point, the court interrupted the prosecutor and asked how this case got filed. The prosecutor began to answer the court's question but the court stated, "I don't want to hear the facts. I want to hear a process in your office." Ultimately, the prosecutor told the court that Harris brought this case to the prosecutor's office's attention.

**{¶ 13}** The court asked the prosecutor what "was the legal excuse for" its motion for leave to dismiss. The prosecutor started to explain the "good cause shown" to support the motion for leave to dismiss. The court, again, interrupted the prosecutor and told him not to interrupt the court. The court stated, "[W]hat is the good cause shown that rise to the level of a legal excuse of why this case should be dismissed." The colloquy continued:

> THE CITY: Your Honor, regrettably, the good cause shown that is being asked for by the Court requires a discussion of facts this Court does not want to hear.
>
> THE COURT: It does not — no, it does not require a discussion of facts.
>
> THE CITY: This motion, Your Honor, is predicated on factual assertions.
>
> THE COURT: Let's go back here.
>
> THE CITY: I am here.

THE COURT:  So the good cause shown that rises to a legal excuse, what are some legal excuses?

. . .

THE CITY:  Your Honor, my explanation of circumstances are factual.

THE COURT:  Okay, so I don't understand what that means.  Are you saying —

THE CITY:  Your Honor, I do not understand what you're asking.

THE COURT:  In order for you to come before a motion to dismiss, pursuant to Criminal Rule 48(a) —

THE CITY:  Yes.

THE COURT:  And ORC . . . 2941.33?

THE CITY:  I'll take your word.

THE COURT:  — and that's the problem because I don't think your office really understands the level of a motion of [sic] dismiss. You filed it just on any case you so choose for whatever reason, but what I'm starting to require is that you follow the statute and the rules of criminal procedure in a court of —

THE CITY:  What's the defect, Your Honor?

THE COURT:  Here's the case in according to —

THE CITY:  Your Honor, what is the defect with my complaint, with my motion to dismiss?  What is defective with my motion to dismiss?

THE COURT:  It is not a legal excuse.

THE CITY:  There is no requirement in Criminal Rule 48a that a legal good cause be shown.  Just good cause shown.

THE COURT:  That is not true.

THE CITY:  That is true, Your Honor.

THE COURT:  This rises to — listen, first of all, take it down —

THE CITY:  Your Honor, —

THE COURT:  If you're going to have a discussion back and forth with me, be mindful —

THE CITY:  I —

THE COURT:  — of the roles we're playing here.

THE CITY:  And I understand.

THE COURT:  And so when I tell you that it does require that you show good cause shown —

THE CITY:  Yes.

THE COURT:  — for reason why the motion to dismiss shall be granted —

THE CITY:  Yes.

THE COURT:  — well, the case law goes into defining what is good cause shown because they tell you that it is not a cursory recitation of a good cause.

THE CITY:  Your Honor, there is no cursory recitation of good cause to find in my motion.

{¶ 14} Although the court focused on the "legal excuse" portion of the definition of good cause, the court never considered, nor allowed the City to talk about, the "substantial reason" part of the good cause definition.  Nonetheless, the prosecutor argued several times that Harris "does not want to testify to what the City is alleging" and "the evidence is insufficient" to warrant prosecution.

{¶ 15}  Once again, we note that the court refused to allow the City to set forth the facts behind its decision to request leave to dismiss the case.  For example, the prosecutor stated, "Your Honor, lack of evidence requires an evaluation of the evidence," to which the court replied, "I don't understand what you're saying.  Lack of evidence."  The prosecutor explained, "But lack of evidence, Your Honor, I have

to look at the facts.  I have to make a determination.  I have to show the Court what I believe to be the insufficiency, and that's what this motion is." The court responded as follows:  "I hear that a [sic] inspector believe that they were making efforts . . . . To make the repairs . . . . And so what I'm telling you is that I think . . . this Criminal Rule 48a motion to dismiss, does not rise to a level in this court, to me, as good cause shown because I don't — I did not see that there was a lack of probable cause to issue the charges." The prosecutor pointed out that the City did not assert lack of probable cause in its motion and was not asserting lack of probable cause at the hearing.  The court responded by denying the City's motion for leave to dismiss.

{¶ 16} Despite the housing court's inexplicable position that the facts do not matter when the court considers a prosecutor's motion for leave to dismiss under Crim.R. 48(A) and R.C. 2941.33, the prosecutor in this case was able to state on the record that he was requesting a dismissal of the complaint for two reasons: insufficient evidence and Harris being unwilling to testify to anything other than the Property being in substantial compliance with the City's code and her belief that SHAO was making efforts to be in compliance.

{¶ 17} The trial court found that, because there was "probable cause to issue the charges," the prosecutor failed to establish good cause to dismiss.  The court denied the City's motion on the record, repeatedly and improperly referring to it as a "motion to dismiss" rather than a motion for leave to dismiss.  The court also

issued a journal entry on October 31, 2024, which denied the City's motion for leave to dismiss.[1]

{¶ 18} In SHAO's first assignment of error, it argues that the court erred when it denied the City's motion for leave to dismiss. SHAO sets forth many reasons to support its argument that the court erred, including prosecutorial discretion, the separation of powers and specifically the judiciary usurping the executive branch's role, the trial court's improper limitation of the definition of "good cause" to only a "legal excuse" and the trial court's improper refusal to hear the facts at issue in this case.

{¶ 19} In its appellate brief, the City reframes SHAO's first assignment of error as follows: "Whether the prosecutor's discretion permits it to continue with the case once the trial court denied the prosecutor's motion to dismiss the case." However, this is not what SHAO argued in its first assignment of error. Indeed, the City states in its brief as follows: "Although the City declined to appeal, the City does not necessarily agree that the trial court was correct in not granting the motion to dismiss, and, to that extent, does not contest [SHAO's] arguments." The remainder of the City's brief under this first assignment of error addresses the notion that the City had probable cause to file the complaint because there was a time when SHAO

---

[1] In this journal entry, the court stated the following: "To clarify the record, the City's motion should have been titled City of Cleveland's Motion to Dismiss Pursuant to Crim.R. 48(A)." The trial court is incorrect. Crim.R. 48(A), which governs dismissals by the State, instructs that the State "may by leave of court and in open court file an entry of dismissal of an indictment . . . ." The City's motion for leave to dismiss was filed and titled properly. Typically, we would not put such a fine point on it, but the record demonstrates that the court in this case had little knowledge of the law.

was not in compliance with the City's code. This is undisputed. However, this is not the only factor that a prosecutor may look to when exercising his or her discretion to pursue charges, and it is not the only factor courts look to when ruling on a motion for leave to file a dismissal entry.

{¶ 20} "Concerning building or housing code violation cases, the primary goal of the court is to correct the violation and bring the property into compliance with all building codes, rather than punish the defendant for misconduct." *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, ¶ 9 (8th Dist.). Furthermore, "the question that the court must consider when the state requests leave to file an entry of dismissal is whether the prosecutor has abused the prosecutorial discretion afforded him or whether the dismissal is clearly contrary to the public intertest." *State v. Hammond*, 2015-Ohio-4156, ¶ 17 (5th Dist.). *See also Rinaldi v. United States,* 434 U.S. 22, 29, fn. 15 (1977) ("The principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.").

{¶ 21} In *Cleveland v. Renger*, 2025-Ohio-4343, ¶ 13 (8th Dist.), this court found the following concerning the housing court's denial of its motion for leave to dismiss: "We thus find that the City's representation that it could not prove an element of the offense — or even it if did, it did not want to use departmental resources to undertake a prosecution under an ambiguous statute — satisfies the "good cause" underpinnings behind Crim.R. 48(A) and R.C. 2941.33."

{¶ 22} Upon review, we find that the court abused its discretion when it denied the City's motion for leave to dismiss the case against SHAO. The trial court demonstrated on the record and in its journal entry that it did not understand Crim.R. 48(A), R.C. 2941.33, the law behind good cause for dismissal of a case and the deference given to prosecutorial discretion. Furthermore, and perhaps most striking, the court's refusal to allow the City to put facts on the record during the hearing regarding the City's motion for leave to file a dismissal entry, which would have allowed the City to establish a "substantial reason" and, thereby, good cause, demonstrated the trial court's lack of knowledge of legal proceedings in general.

{¶ 23} We are able to consider the City's good cause argument only because it is spelled out in its motion and the prosecutor was able to outline its reasoning briefly at the hearing, despite the court's prohibition. The prosecutor's determination that the City had insufficient evidence to pursue the charges against SHAO because the City's only potential identified witness, Harris, would have testified that the Property was in substantial compliance with the City's code amounts to a substantial reason that affords a legal excuse of why this case should be dismissed. The court abused its discretion by deciding otherwise.

{¶ 24} Accordingly, SHAO's first assignment of error is sustained. SHAO's remaining assignments of error are rendered moot pursuant to App.R. 12(A)(1)(c). The trial court's judgment is reversed, and this case is remanded with instructions to grant the City's motion for leave to dismiss this case.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
DEENA R. CALABRESE, J., CONCUR